[Civ. No. 31301. Second Dist., Div. Three. Jan. 25, 1968.]

In re JAMES CHRISTOPHER BRADLEY, a Person Coming Under the Juvenile Court Law.

LELAND C. CARTER, as Chief Probation Officer, etc., Plaintiff and Respondent, v. JAMES CHRISTOPHER BRADLEY, Defendant and Appellant.

Kurtzman & Sarfaty and Joseph Sarfaty for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—On October 13, 1966, a petition was signed by the probation officer, and filed in the Superior Court of Los Angeles County, wherein it was alleged that James Christopher Bradley, the appellant herein, came within the provisions of section 602 of the Welfare and Institutions Code,[1] in that "Said minor, James Christopher Bradley, did on 9-16-66, at approximately 3:00 p.m., in the 1800 block of Fern Lane, City of Glendale, County of Los Angeles, drive a motor vehicle upon a highway with wilful and wanton disregard for the safety of persons or property and did proximately caused [sic] bodily injury to one, Julia Ellen Christensen; thereby violating Section 23104 of the California Vehicle Code." The petition contained the request that the minor be adjudged and declared a ward of the juvenile court.

On October 13, 1966, a notice of hearing was duly served on the minor and his parents and a hearing on the petition was set for October 28, 1966. On October 27, 1966, the probation officer's report and social study was filed. On October 28, 1966, the matter was heard before a referee of the juvenile court. Evidence having been received and considered, the referee found that the allegations of the petition were not true, that the petition had not been sustained, and ordered its dismissal. On November 7, 1966, a judge of the superior court, sitting as a judge of the juvenile court, of his own motion, good cause appearing therefor, vacated and set aside the order of dismissal. A rehearing was ordered and was set for November 15, 1966. The district attorney was invited to attend this hearing. The court reporter was directed to prepare a transcript of the oral proceedings had before the referee and was ordered to file such transcript with the court before November 15, 1966. Due notice of the rehearing was prepared and served upon all parties interested, including the attorney for the minor.

On November 15, 1966, the minor and his parents were present and the minor was represented by counsel. A deputy district attorney was also present. By stipulation of counsel

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1] "Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

the rehearing was conducted de novo before a court commissioner, sitting as a judge pro tempore. At the conclusion of this hearing the trial judge found the allegations of the petition to be true and rendered judgment declaring the minor to be a ward of the juvenile court. The trial judge, after reading and considering the report of the probation officer, ordered the minor placed under the control and supervision of the probation officer, but to remain in the home of his parents. The minor's driver's license was suspended for six months, and the matter was continued one year to the non-appearance calendar for report. The appeal is from the judgment.

### The Facts

On September 16, 1966, at about 3 p.m., the minor, referred to hereinafter as James, was driving his 1955 model Chevrolet automobile in an easterly direction on Fern Lane. Dale Martin Christensen was riding as a passenger in James' car. The vehicle struck and seriously injured Julia Christensen, 14 years of age, and the sister of Dale. Dale first saw his sister when she was approximately 450 feet away from the automobile. James, at this time, was traveling at a speed of about 35 miles per hour. Julia was coming out of a neighbor's driveway into the street and had begun to walk down the street in the direction of the Chevrolet automobile. It appeared that she was waiting for the car to pull alongside of her, ''it looked like she was trying to flag us down.'' She was about 10 feet north of the south curb line of Fern Lane. When the vehicle was approximately 150 feet away from Julia, James changed the course of his vehicle to a path directly towards Julia and floored the accelerator. The vehicle shifted into passing gear and continued in its path towards Julia, reaching a speed of between 40 and 45 miles per hour. Julia panicked and froze. When the vehicle was close upon her she took a step to the north, trying to get out of the way, and at the same time James swerved his vehicle in the same direction, trying to avoid her. As the vehicle swerved sharply to the left it laid down skid marks of approximately 80 feet in length. Dale first heard the screech of brakes when the vehicle was approximately 10 feet away from his sister, and he noticed no decrease in its speed prior to this time. Prior to the time that James put his foot on the brake pedal, he held his foot on the accelerator which was depressed clear to the floorboard. Julia was thrown a distance of 30 or 40 feet as a result of the impact. About five days after the accident, Dale, in the presence of a schoolmate, Dave Cunningham, told James that he

"had gotten a copy of the police report and read it, and it make it look like it was Julia's fault, the accident." When Dale asked James why he had not said anything to the police about "heading towards Julia or flooring the accelerator," James replied that, "it was because he was shaken up and disturbed at the time, in shock." Dave Cunningham also heard the conversation between James and one of his friends. In that conversation, when asked what he had been doing, James replied he had been "playing chicken."

Dale had driven with James on Fern Lane at other times prior to the accident and James usually drove at a speed of 40 miles per hour up the street. Dale was with James on one such occasion when the vehicle was proceeding on the right hand side of the street. At this time James accelerated the vehicle and swerved it to the left hand side of the street toward a group of "approximately four kids."

After the accident James told his mother, in response to her question as to how fast he was going, that he was going "Oh, about 40 miles." Richard Weik, a friend of James, testified that when he asked James what had happened, the latter replied that "I had swerved toward Julia, and when I swerved away she swerved with me." There was testimony of the investigating officers relating to skid marks, point of impact, dents found upon the Chevrolet automobile, and the estimated speed of the vehicle based upon the length and the character of the skid marks found at the scene of the accident. There was also testimony from those who lived in close proximity to the scene of the accident describing the acceleration of the motor from its sound. One such witness stated that she heard the screeching of brakes after she heard a thud. Another such witness estimated the speed of the Chevrolet as all of 45 to 50 miles per hour. It would serve no useful purpose here to set forth this testimony in detail.

The appellant minor urges that (1) the trial court was without jurisdiction to order a rehearing of the petition; (2) section 559 of the Welfare and Institutions Code violates the Fifth and Fourteenth Amendments to the United States Constitution; (3) the appellant was deprived of his right to due process under article I, section 13 of the state Constitution, in that he was twice put in jeopardy for the same offense; and (4) the evidence is insufficient as a matter of law to sustain the judgment.

We will first take up the matter of the sufficiency of the evidence to sustain the judgment. Section 23103 of the

Vehicle Code provides in part that "Any person who drives any vehicle upon a highway in wilful or wanton disregard for the safety of person or property is guilty of reckless driving. . . ." Section 23104 of the Vehicle Code provides for an increased penalty whenever reckless driving of a vehicle proximately causes bodily injury to any person. Conduct which constitutes reckless driving as defined by the Vehicle Code has been likened to conduct which amounts to wilful misconduct under the guest statute. (Veh. Code, § 17158.) It is said that " 'Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' " (*People* v. *McNutt,* 40 Cal.App.2d Supp. 835, 838 [105 P.2d 657]; approved, *People* v. *Young,* 20 Cal.2d 832, 837 [129 P.2d 353].) Here the evidence discloses that the minor appellant wilfully and knowingly drove his vehicle, at a comparatively high rate of speed, directly toward a 14-year-old child, in what the appellant described as a game of "chicken." The child froze with terror, was unable to move out of the direct path of the oncoming vehicle, and consequently was struck and seriously injured. Under these circumstances there was an abundance of evidence to support the trial court's conclusion that the minor plaintiff intentionally drove his vehicle with knowledge that serious injury to the minor victim was probable, or that he intentionally acted with a wanton and reckless disregard of the possible result of his conduct.

Sections hereinafter cited shall refer to sections of the Welfare and Institutions Code. Section 554 authorizes a judge of the juvenile court to assign cases to a referee of such court, who shall hear such cases with the same powers as a judge of the juvenile court. Section 555 makes an order of a referee, removing a minor from his home, conditional upon approval of a judge of the juvenile court. Section 556 provides that, except as to orders specified in section 555, and except as provided in section 557, all orders of the referee shall become immediately effective, subject to the right of review or until vacated or modified upon rehearing by order of the judge of the juvenile court. The right of rehearing as used in section 556 refers to the right given to the minor or his parent or guardian reserved in section 558. Section 558 provides for the right of the minor or his parent or guardian to obtain a review of an order of a referee and sets forth certain procedures

relating thereto. ■ Section 559 provides: "A judge of the juvenile court may, on his own motion, order a rehearing of any matter heard before a referee." Section 560 provides that: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo." The provisions of the juvenile court law are designed to protect the rights of the minor or his parent or guardian in giving such person a right of review of an order of a referee of the juvenile court. They do not provide a one-way street, however, for the exclusive use and benefit of the minor or his parent or guardian, for section 559, we believe, affords the state a right of review in any matter heard before a referee. Viewing the statutes as a whole, it appears that all orders of a referee are subject to review by a judge of the juvenile court, either by a requirement to that effect established by such judge or by other order of the judge made in accordance with the applicable statutes. The state has a similar interest to that of the parent or guardian in the welfare of the minor for the state stands *in loco parentis* to him. (*In re Daedler*, 194 Cal. 320, 326 [228 P. 467].) Proceedings in the juvenile court are in the nature of guardianship proceedings in which the state as *parens patriae* seeks to relieve the minor of the stigma of a criminal conviction and to give him corrective care, supervision and training. (*People* v. *Dotson*, 46 Cal. 2d 891, 895 [299 P.2d 875].) It is not unreasonable then, nor improper, that the state should have some means of review of an order of a juvenile court referee if such order is not in the best interests and for the welfare of the minor. Section 559 affords the state such a remedy. ■ As heretofore pointed out, the rehearing of a matter heard before a referee is conducted as a trial de novo before a judge of the juvenile court, and this judgment then is subject to review upon appeal, thus affording the minor or his parent or guardian and the state the right of due process under the federal and state constitutional guarantees.

■ A proceeding in the juvenile court is not a criminal proceeding. (Welf. & Inst. Code, § 503; *People* v. *Dotson*, 46 Cal.2d 891, 895 [299 P.2d 875]; *In re Bacon*, 240 Cal.App.2d 34, 45 [49 Cal.Rptr. 322].) It is also true that, while proceedings in the juvenile court are civil proceedings for the welfare of the minor, the proceedings still deprive the individual of liberty, as do criminal proceedings. (See, *In re Macidon*, 240 Cal.App.2d 600, 610 [49 Cal.Rptr. 861].) The United States Supreme Court, recognizing certain similarities between juve-

nile court proceedings and criminal proceedings, has held that the minor is entitled to due process under the guaranties of the Fifth Amendment to the United States Constitution. The court held that the minor was entitled to (1) notice of the charge; (2) the right to counsel; (3) the right to confrontation and cross-examination; and (4) the privilege against self-incrimination. (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 529, 87 S.Ct. 1428].) The court also had before it the question of the right of the minor to a transcript of the proceedings and the right to appellate review, but did not pass upon these questions. The Juvenile Court Law affords the minor protection on both of these matters. In *Gault,* the court quoted with approval the following language from *Kent* v. *United States,* 383 U.S. 541, 562 [16 L.Ed.2d 84, at p. 97, 86 S.Ct. 1045], " 'We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' " (*In re Gault, supra,* 387 U.S. at p. 30 [18 L.Ed.2d at p. 548, 87 S.Ct. at p. 1445].)

The minor appellant asserts that he was subjected to double jeopardy. The concept of double jeopardy is applicable in the trial of criminal actions. It has been said that " ' [J]eopardy attaches to a defendant when he is placed on trial before a court of competent jurisdiction upon a valid indictment or information before a jury duly impaneled and charged with his deliverance.' " (*Paulson* v. *Superior Court,* 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]; *Mitchell* v. *Superior Court,* 207 Cal.App.2d 643, 648 [24 Cal.Rptr. 671].) In the case at bench the order of the referee dismissing the petition was a conditional order subject to be set aside by the judge of the juvenile court. It was not a final adjudication of acquittal by a court of competent jurisdiction, but in effect was subject to review and approval by such judge. Where the case has been heard in the first instance by a judge of the juvenile court the decision in such case is final and the law does not authorize the judge to order a rehearing on his own motion. Under these circumstances the final decision was that rendered by the judge upon the rehearing, as to which the minor is given the right of review upon appeal. The conditional nature of a referee's order, as provided by sections 555, 556, 557 and 559, constitutes a protection which benefits the minor as well as society. We find nothing in the applicable provisions of the Juvenile Court Law which offends the Fifth

and Fourteenth Amendments to the United States Constitution or which offends article I, section 13, of the state Constitution.

■ The appellant asserts that section 559 is unconstitutional because it is vague and indefinite and sets no standards for the guidance of the court. The appellant does not point out or suggest what standards the Legislature should have provided that it did not provide. The section is procedural in its nature and implements the power of the juvenile court judge, given to him by other sections of the Juvenile Court Law, to make the decision of the referee conditional, and not final. The Legislature has given the juvenile court judge the power to establish requirements that all orders of the referee shall be expressly approved by him before becoming effective as final judgments. Prior to the amendment of the Juvenile Court Law in 1961, all findings and recommendations of the referee were required to be submitted to the juvenile court judge for approval before they became effective as orders. (Stats. 1937, ch. 369, p. 1022, § 567.) This placed an unacceptable burden upon the conscientious juvenile court judge whose work was already heavy.[2] Section 559, added by the statutes of 1961, was one of the measures adopted to relieve the judge of this burden and to allow him to review the order of the referee in those cases in which he felt that it was necessary or advisable. The matters and things which might prompt the juvenile court judge to order a rehearing on any matter heard before a referee could vary widely depending upon the facts of each case. Just how the Legislature could lay down detailed guidelines to help the juvenile court judge in determining when to order, or when not to order, a rehearing under such wide and varied circumstances is not shown by the appellant, nor is it apparent to us. In any event, under the Juvenile Court Law, the minor is afforded due process of law by review of the judgment of the juvenile court judge on appeal from the judgment rendered upon the rehearing. The appellant's claim that section 559 is unconstitutional because of its alleged vagueness and indefiniteness is without merit.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1968.

---

[2]See Governor's Special Study Commission on Juvenile Justice, Part 1, pp. 36-37.