Donald BRADY et al.

v.

William SWISHER et al.

Civ. No. Y–74–1291.

United States District Court,
D. Maryland.

Sept. 16, 1977.

**1362**

Peter S. Smith, Michael S. Elder, and Phillip G. Dantes, Baltimore, Md., for plaintiff.

Bernard Raum, Asst. Atty. Gen., Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, and NORTHROP and YOUNG, District Judges.

## MEMORANDUM AND ORDER

On November 25, 1974 plaintiffs[1] instituted this action against Milton Allen, then State's Attorney for Baltimore City; Howard Merker, Chief of Operations, Office of State's Attorney for Baltimore City; Barbara Daly, Chief Juvenile Court Services Division, Office of State's Attorney for Baltimore City; and James Benton, Deputy Clerk, Circuit Court for Baltimore City, Division of Juvenile Causes, seeking declaratory and injunctive relief, and to enjoin the defendants from subjecting plaintiffs to a second trial or disposition pursuant to Rule 908 e 2 and 3, Md.Rules of Procedure, which plaintiffs allege violates the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment. This action is brought pursuant to 42 U.S.C. § 1983 and this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1343.

Subsequent to the designation of a three-judge court pursuant to 28 U.S.C. § 2284, plaintiffs filed a request for certification as a class. Having found that the numbers of individuals to be joined might prove impracticable, that the requirements of commonality and typicality of law and fact have been met and that the plaintiffs can adequately represent the interests of the class and are represented by competent counsel, that request is granted. Rule 23(a)(1) F.R.Civ.P. The class is designated as a (b)(2) class under Rule 23 F.R.Civ.P. and consists of all juveniles against whom, on or after June 12, 1976, the State of Maryland had filed exceptions to the finding of non-delinquency. This Court has previously granted the motion of Stevie Jacobs, Dennis Green and Steven Stencil to intervene as plaintiffs. The defendants have moved for relief from this order since the exceptions filed by the State's Attorney's Office were later withdrawn. Paul Meadows, on February 20, 1976, and Eugene Fields on May 21, 1976, also moved to intervene as plaintiffs. The Office of the State's Attorney has also withdrawn its exception to the findings and recommendations of the master in Meadows' case. As of the time of final argument before this three-judge panel (June 12, 1976) a rehearing was still pending on the exceptions filed by the Office of the State's Attorney in Fields' case, although the State subsequently withdrew its exception. The motion of Eugene Fields to intervene as a plaintiff will be granted. The motion of Meadows to intervene is denied and the defendants are granted relief from the order granting Jacobs, Green and Stencil leave to intervene.

Pending determination of nine habeas corpus petitions, filed by the original plain-

1. Donald Brady; Michael A. Epps; James Love, a minor by Joyce Love, his mother and next friend; Phillip Witherspoon, a minor by Elsie Witherspoon, his mother and next friend; Joseph Fenwick, a minor by William Beckett, his stepfather and next friend; William L. Campbell, a minor by William Campbell, his father and next friend; Andre Aldridge, a minor by Ruth Kent, his mother and next friend; George McLean, a minor by Minnie Johnson, his mother and next friend; and Quinton Stewart, a minor by Haynie Stewart, his father and next friend.

tiffs here, the three-judge court stayed consideration of this case. On June 12, 1975 Judge Thomsen granted habeas corpus relief to six of the plaintiffs, but dismissed the petitions of Brady, Epps and Love without prejudice. *See, Aldridge v. Dean,* 395 F.Supp. 1161 (D.Md.1975).

On July 17, 1975 the defendants, having been granted leave by the Court to file a supplemental pleading, moved to dismiss the complaint on the ground of mootness since the Maryland legislature had enacted, effective July 1, 1975, Chapter 554 of the Acts of 1975, Md.Ann.Code, Cts. & Jud. Proc.Art., § 3–813, and the Maryland Court of Appeals amended Chapter 900 of the Maryland Rules of Procedure, to conform the rules to Chapter 554 of the Acts of 1975, as well as the opinion of this Court in *Aldridge v. Dean, supra.* Former Rule 908e 2 and 3 no longer exists, but has been amended and reenacted as Rule 910e, Md. Rules of Procedure. The plaintiffs were then granted leave to file a supplemental complaint seeking a declaratory judgment that Md.Ann.Code, Cts. & Jud.Proc.Art., § 3–813 and Rule 910e, Md.Rules of Procedure, violate the Double Jeopardy Clause of the Fifth Amendment, and an injunction enjoining the defendants, Swisher, the current State's Attorney for Baltimore City, Merker, Sheldon Mazelis,[2] Chief of the Juvenile Division, Office of State's Attorney, Baltimore City, and Benton from taking exceptions to findings of non-delinquency or from taking exceptions to dispositions pursuant to Md.Ann.Code, Cts. & Jud.Proc. Art., § 3–813 and Rule 910e. The defendants' motion to dismiss this supplemental complaint was denied after a hearing on the motion.

The defendants reasserted their argument that this case should be dismissed on the ground of mootness. However, the intervention of Eugene Fields saves this case from becoming moot. At oral argument it was agreed that the State has filed an exception to the master's findings and recommendations and that a hearing has been set before the juvenile judge on the exception. Thus an actual case and controversy exists between the plaintiff, Eugene Fields, and the defendants.

An evidentiary hearing was conducted in the nine habeas corpus cases (*Aldridge, supra*) at which counsel stipulated that the evidence admitted there would be admissible in this proceeding subject to any objections. This Court conducted a brief evidentiary hearing and counsel have submitted several stipulations and additional documentation. Most of this new evidence brings up to date the statistics introduced in the *Aldridge* hearing.

A case is generally instituted when the Office of the State's Attorney files a petition which alleges that the "Named child under the age of eighteen years is Delinquent." If the case is filed in Baltimore City after arraignment, it is assigned to either the juvenile judge or one of the seven masters. The presiding juvenile judge in Baltimore City hears the more aggravated type of case, such as murder, rape or armed robbery. He also hears all cases in which the juvenile is represented by the Maryland Juvenile Law Clinic. If the case is assigned to a master, an adjudicatory hearing is held at which the State's Attorney presents his case. Each witness is sworn and subject to direct and cross examination. After the close of the State's case, the defense normally moves for a dismissal of the petition. If the motion is denied, the defense then presents its case. After hearing argument, the master announces his finding to the parties, explaining the reasons for his conclusions. These proceedings are now recorded on tape. If the charges are not sustained, some masters inform the juvenile that the State has a right to take an exception. Others do not so inform the juvenile. Under Rule 910 the master must submit to the juvenile judge a written

---

2. This Court has granted plaintiffs' motion to substitute Swisher for Allen and Gault—then Mazelis—for Daly. In his complaint, Fields only seeks relief from Swisher, Gault and Daly.

statement of his proposed findings of fact, conclusions of law and recommendations. However, in most cases the parties agree to waive the master's written proposed findings of fact and conclusions of law. The memoranda are normally submitted to the juvenile judge when the master has recommended commitment or detention.

Since the new rules became effective July 1, 1975, the juvenile judge has always signed the proposed order where the master has made a finding that the charge was not sustained and the State does not take an exception, even though the judge may hold another hearing on his own motion. If an exception is taken, the matter is set for a hearing before the juvenile judge. If the State is the objecting party, the hearing must be on the record unless the juvenile assents to the introduction of evidence. In recent years the State has filed few exceptions to the findings of a master.

The legal issue, and only issue, presented in this case is whether the defendants are barred by the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment, *see Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), from taking exceptions to findings and recommendations of a master pursuant to Md. Ann.Code, Cts. & Jud.Proc.Art., § 3–813, and Rule 910e, Md.Rules of Procedure, in order to obtain a different resolution by the juvenile judge.

Md.Ann.Code, Cts. & Jud.Proc.Art., § 3–813 provides:

(a) The judges of a circuit court, and the Supreme Bench of Baltimore City, may not appoint a master for juvenile causes unless the appointment and the appointee are approved by the Chief Judge of the Court of Appeals. The standards expressed in § 3–803, with respect to the assignment of judges, shall also be applicable to the appointment of masters. A master must, at the time of his appointment and thereafter during his service as a master be a member in good standing of the Maryland Bar. This subsection shall not apply to a master appointed prior to June 1, 1971, who is approved by the judge of the circuit court exercising juvenile jurisdiction.

(b) If a master is appointed for juvenile causes, he is authorized to conduct hearings. These proceedings shall be recorded, and the master shall make findings of fact, conclusions of law, and recommendations as to an appropriate order. These proposals and recommendations shall be in writing, and, within 10 days after the hearing, the original shall be filed with the court and a copy served upon each party to the proceeding.

(c) Any party, in accordance with the Maryland Rules, may file written exceptions to any or all of the master's findings, conclusions, and recommendations, but shall specify those items to which he objects. The party who files exceptions may elect a hearing *de novo* or a hearing on the record before the court. The hearing shall be limited to those matters to which exceptions have been taken.

(d) The proposals and recommendations of a master for juvenile causes do not constitute orders or final action of the court. They shall be promptly reviewed by the court; and in the absence of timely and proper exceptions, they may be adopted by the court and appropriate orders entered based on them.

(e) If the court, on its own motion and in the absence of timely and proper exceptions, decides not to adopt the master's findings, conclusions, and recommendations, or any of them it shall conduct a *de novo* hearing. However, if all parties and the court agree, the hearing may be on the record.

Rule 910e provides:

Upon the filing of exceptions, the judge shall instruct the clerk to schedule a hearing on the exceptions. A party who files exceptions, other than the State, may elect a hearing *de novo* or a hearing on the record. If the State is the

excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection. Either hearing shall be limited to those matters to which exceptions have been taken.[3]

■ Clearly these two provisions conflict. The statute permits a *de novo* hearing if the party taking an exception requests one or if the court, on its own motion, decides not to adopt the master's findings. However, the rule provides that a hearing on exceptions filed by the State must be on the record and not *de novo* unless the juvenile raises no objection. Under Maryland case law, a rule which conflicts with a statute will prevail if it was adopted subsequent to the passage of the statute and is within the rule-making power of the Maryland Court of Appeals. *See County Fed. S. & L. v. Equitable Sav. & Loan,* 261 Md. 246, 253, 274 A.2d 363 (1971). Here both the statute and the rule became effective on July 1, 1975; however, the rule was approved and adopted by the Court of Appeals after the statute was signed into law. At oral argument counsel agreed that the rule controls. Thus this Court need only discuss the provisions of the rule.

Resolution of the legal issue must consider two questions: (1) Whether the adjudicatory hearing before the master is a jeopardizing proceeding and (2) If so, whether the proceeding bars any further adjudication by the judge of the Juvenile Court. *See Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); Whitebread & Batey, *Juvenile Double Jeopardy,* 63 Geo.L.J. 857 (1975).

The decisions of the Supreme Court in *Breed* and of Judge Thomsen in *Aldridge*

clearly establish that jeopardy attaches when the State begins to offer evidence in an adjudicatory hearing before a master. In *Breed* the Court stated:

We believe it is simply too late in the day to conclude . . . that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years * * *.

As we have observed, the risk to which the term jeopardy refers is that traditionally associated with "actions intended to authorize criminal punishment to vindicate public justice." *United States ex rel. Marcus v. Hess,* [317 U.S. 537] at 548–549 [63 S.Ct. 379, 87 L.Ed. 443]. Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once "for the same offense." [Citation omitted.] * * *

Thus in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of " 'anxiety and insecurity' in a juvenile, and imposes a 'heavy personal strain.' " [Citation omitted.] * * * We therefore conclude that respondent was put in jeopardy at the adjudicatory hearing. Jeopardy attached when respondent was "put to trial before

3. Rule 910e was amended, effective January 1, 1977, and the clauses at issue in this case are now incorporated, without substantive changes, in Rule 911c Md.Rules of Procedure, paragraph 2:

Upon the filing of exceptions, a prompt hearing shall be scheduled on the exceptions. An excepting party other than the State may elect a hearing de novo or a hearing on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection. In either case the hearing shall be limited to those matters to which exceptions have been taken.

Reference to the section is made in the remainder of the body of this opinion as Rule 910e [Rule 911c].

the trier of facts," [Citation omitted], that is, when the Juvenile Court, as the trier of the facts, began to hear evidence. *Breed v. Jones,* 421 U.S. at 529–531, 95 S.Ct. at 1785–1787. Judge Thomsen, quoting this same language, concluded in *Aldridge* at 1172, "A juvenile is placed in jeopardy when the state begins to offer evidence in an adjudicatory hearing before a master." A similar conclusion was reached in *Brenson v. Havener,* 403 F.Supp. 221 (N.D.Ohio 1975).

■ Despite these decisions, the defendants, relying on *Matter of Anderson,* 272 Md. 85, 321 A.2d 516 (1974), argue that jeopardy does not attach when the State begins to offer evidence in an adjudicatory hearing before a master, but only when the master transmits his recommended findings to the juvenile judge. The Court of Appeals of Maryland in *Matter of Anderson, supra,* stated that the role of a master is only advisory and that a master has no judicial power. Defendants argue that since a master cannot enter a final order in the case, a juvenile is not placed in jeopardy when he appears before the master, thus distinguishing *Breed* where the juvenile originally appeared before a juvenile judge who had the power to enter a final order, if he so chose. The defendants in adopting this argument overlook the clear language in both *Breed* and *Aldridge.* Even though the master cannot enter a final order, the adjudicatory hearing still engenders elements of "anxiety and insecurity" in a juvenile and imposes a "heavy personal strain," and the juvenile is "put to the task of marshaling his resources against those of the State." *Aldridge* at 1173. The changes in the proceedings before a master, caused by the adoption of Rule 910, [Rule 911] do not alter the conclusion that jeopardy attaches when the State begins to offer evidence before a master in an adjudicatory hearing. That hearing is similar to a court trial in a criminal case. The State first presents its case by calling witnesses who are sworn and subject to cross-examination by the juvenile's counsel. If the juvenile's motion for a directed verdict is denied, then he may put on his case. Clearly jeopardy attaches at such a proceeding when the State begins to offer evidence before the master, the trier of facts.

Having determined that jeopardy attaches when the master begins to hear evidence, it must next be determined if a juvenile is placed twice in jeopardy when the defendants here take an exception to the findings of a master pursuant to Rule 910e [Rule 911c]. In analyzing the constitutionality of the procedures permitted by Rule 910e [Rule 911c], two issues must be considered: (1) Whether "continuing jeopardy" applies to this situation and (2) Whether the rehearing on the record before the juvenile judge is justified by interests of society, reflected in the juvenile court system, or by interests of the juveniles themselves. *See Breed v. Jones, supra,* 421 U.S. at 534–535, 95 S.Ct. 1779.

Besides the courts in *Aldridge, Brenson* and *Matter of Anderson,* two state courts have faced the application of the Double Jeopardy Clause to review by a juvenile court judge of a master's findings. In *Bradley v. People,* 258 Cal.App.2d 253, 65 Cal.Rptr. 570 (1968), the California Court of Appeals, stressing the "conditional nature of a referee's order," found nothing in the applicable provisions of the Juvenile Court Law, permitting a *de novo* review of a referee's order, which offended the Fifth and Fourteenth Amendments. *Bradley* at 575. Later, in following this holding in another case, the California Court of Appeals stressed that in *Bradley* "the determinative factor . . . was the limited nature of the powers of a referee." *In Re Henley,* 9 Cal.App.3d 924, 88 Cal.Rptr. 458, 461 (1970).

In *People v. J. A. M.,* 174 Colo. 245, 483 P.2d 362 (1971) (en banc), the Colorado Supreme Court held that a second hearing before the juvenile judge, following a referee's finding that the evidence was not sufficient to sustain the petition in delinquency,

did not place the juvenile twice in jeopardy. The court stated:

> Under these provisions [of the statute], the findings and the recommendations of the referee *do not* have the effect of a final judgment until adopted or modified by the court. . . .
>
> We are not here dealing with two separate proceedings, one before the referee and a second before the court, but rather with one proceeding to pass on the question of possible delinquency.

*People v. J. A. M., supra,* at 248–249, 483 P.2d at 364.

Both cases were decided before the Supreme Court considered *Breed v. Jones* and contain language indicating that the Double Jeopardy Clause did not apply to juvenile proceedings. Thus, in light of *Breed,* these cases might be decided differently today.[4] *Bradley* turns on the theory that jeopardy does not attach at a hearing before a referee; however, this Court, with the advantage of the Supreme Court's language in *Breed,* has already determined that jeopardy does attach at a hearing before a master. The Colorado court's theory of "continuing jeopardy" constituting only one proceeding has been criticized. *See* Whitebread & Batey, *Juvenile Double Jeopardy,* 63 Geo.L.J. 857, 878 (1975). The same result is unlikely today in light of the statement in *Breed* that " . . . the fact that the proceedings against respondent had not 'run their full course' [Citation omitted], within the

contemplation of the California Welfare and Institutions Code, at the time of transfer, does not satisfactorily explain why respondent should be deprived of the constitutional protection against a second trial." *Breed,* 421 U.S. at 534, 95 S.Ct. at 1788. Thus, these cases are of little precedential value to this Court.

■ Several policies underlie the double jeopardy prohibition. The policies which most concern this Court now were best stated by Justice Black in *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

> The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. * * * The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

A third policy relevant here is that the prosecutor should not be able to search for

---

4. Since the submission of final briefs in this case, counsel for the defendants has brought to the Court's attention two recent California cases concerned with review by juvenile court judges of referee's decisions. In *Jesse W. v. Superior Court of Mateo County,* 133 Cal.Rptr. 870 (Ct.App.1976), the court persisted in finding, as had the courts in pre-*Breed* cases, that the subordinate judicial powers of the referees made their determination non-adjudicatory and that therefore there was a "continuing" jurisdiction over a case assumed by the juvenile court judge. "Presiding" power was held not to be the equivalent of "decisional" power. *Jesse W.* does not, in the opinion of this Court, square with the teaching of *Breed,* and the California court's holding that even though jeopardy attaches at the referee's hearing it is somehow of less than constitutional magnitude

seems to be in error. Counsel for plaintiff in the instant case has informed this Court that *Jesse W.* is on appeal to the Supreme Court of California and thus is of little persuasive value. A second case, *In re Anthony M.,* 64 Cal. App.3d 464, 134 Cal.Rptr. 540 (1976), does not even cite *Breed* and is clearly concerned with the impact of a juvenile's request for a rehearing, to which he is entitled as a matter of state law in California. Although there is, 421 U.S. at 543, 95 S.Ct. 1779, general language alluding to the subordinate status of the referee's opinion, the focus of the court's concern is upon the validity of a juvenile court's assessing a more severe penalty upon the rehearing of the juvenile's case.

an agreeable sentence by bringing successive prosecutions for the same offense before different judges. *See* Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 266–67, 277–78 (1965). Here, the defendants can take an exception under Rule 910e [Rule 911c] to a recommended disposition of probation to argue for detention before the juvenile judge.

The defendants have argued that jeopardy does not terminate with the submission of the proposed findings and recommendations by the master to the judge, but rather continues until the trial court is able to make an adjudication. In the past the concept of "continuing jeopardy" has only been applied in cases in which the defendant has successfully obtained a second trial. *See Jones v. Breed*, 497 F.2d 1160, 1167 (9th Cir. 1974). In recent years the Supreme Court has dealt with double jeopardy cases where the Government has taken an appeal. In *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Government appealed the grant of a post-verdict motion for dismissal after the jury had entered a guilty verdict. However, the Third Circuit Court of Appeals barred review of the District Court's ruling on the ground of double jeopardy. The Supreme Court reversed on the ground that the constitutional protection against Government appeals attaches where there is danger of subjecting the defendant to a second trial for the same offense. There was no such danger in *Wilson* because, if the District Court's ruling was overturned, the jury verdict could simply be reinstated. Although the Court permitted the Government to appeal in such situations, the Court stated:

> . . . we continue to be of the view that the policies underlying the Double Jeopardy Clause militate against permitting the Government to appeal after a verdict of acquittal. Granting the Government such broad appeal rights would allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first; it would permit him to re-ex-amine the weaknesses in his first presentation in order to strengthen the second; and it would disserve the defendant's legitimate interest in the finality of a verdict of acquittal.

*United States v. Wilson, supra*, at 352, 95 S.Ct. at 1026.

The same day the Court ruled in *Wilson* it announced its decision in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). There, after a bench trial, the District Court "dismissed" the indictment and "discharged" the respondent. The Second Circuit dismissed the Government's appeal "for lack of jurisdiction on the ground that the Double Jeopardy clause prohibits further prosecution." Since the Court was unsure whether the District Court had based its decision on a determination of facts or on a resolution of a legal question, *Wilson* could not govern the case. The Court concluded:

> . . . [I]t is enough for purposes of the Double Jeopardy Clause . . . that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor. To subject him to any further proceedings at this stage would violate the Double Jeopardy Clause . . .

*United States v. Jenkins, supra*, at 370, 95 S.Ct. at 1013.

Thus the defendants' contention that there is no violation of the Double Jeopardy Clause because the jeopardy continues until a final adjudication by the judge must be rejected. This concept has never been accepted by the Supreme Court in this context. Review by the juvenile judge would require more than the mere reinstatement of a finding of delinquency; it would re-

quire supplemental findings by the judge. The defendants' argument is basically that under the statutory scheme the hearing before the master and the later review by the juvenile judge are part of one continuing proceeding. The Supreme Court has stated that such an argument "does not satisfactorily explain why respondent should be deprived of the constitutional protection against a second trial." *Breed v. Jones, supra,* 421 U.S. at 534, 95 S.Ct. at 1788.

■ The argument that the hearing before the juvenile judge may only be on the record and not *de novo* does not alter the inescapable conclusion. The most important element is that the State has more than one opportunity to convince a trier of fact of the guilt of the juvenile. In *Jenkins, supra,* the Supreme Court found that the Double Jeopardy Clause would be violated even if no additional evidence were to be taken by the trial court. *Jenkins,* 420 U.S. at 370, 95 S.Ct. 1006. Interestingly in *Breed* the case in the adult criminal court was "submitted to the court on the transcript of the preliminary hearing." *Breed,* 421 U.S. at 525, 95 S.Ct. at 1783. Thus, it is not the taking of additional evidence or the conducting of a *de novo* hearing that violates the Double Jeopardy Clause; it is the subjecting of the juvenile to a second proceeding at which he must once again marshal whatever resources he can against the State's and at which the State is given a second opportunity to obtain a conviction. Merely declaring that the two proceedings are one does not answer these intrusions upon the policies of the Double Jeopardy Clause.

Although Rule 910e [Rule 911c] violates the Double Jeopardy Clause, this Court must consider if giving the juvenile the constitutional protection against multiple trials in this context will diminish flexibility and informality to the extent that those qualities relate uniquely to the goals of the juvenile court system. *See Breed v. Jones, supra,* at 535, 95 S.Ct. 1779. The defendants have offered no explanation of how the master system fosters the flexibility and informality of the juvenile court system. They do assert that if the master system is struck down by this Court that the case load would be too burdensome for the only juvenile judge currently sitting in Baltimore City. The Report of the Committee on Juvenile and Family Law and Procedure to the Maryland Judicial Conference (1976) recommends that the juvenile master system be eliminated and that all juvenile proceedings requiring judicial attention be handled by a juvenile court judge. The Report stated in part: "No longer can we, the Judiciary, tolerate the treatment of juvenile justice as the 'step child' of the courts. The problems of juvenile justice have too great an impact on the quality of life in the state and future criminal behavior in general to be shunned and ignored as something beneath the dignity of a judge." Thus, the master system not only does not foster any of the goals of. the juvenile court system, it may be a detriment. *See* also Final Report of the Commission on Juvenile Justice to the Governor and the General Assembly of Maryland, January 1, 1977.

Another factor to be considered in deciding whether a constitutional right should be applied to juvenile proceedings is the recommendations of various studies and model acts dealing with the juvenile court system. *See In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Rudstein, *Double Jeopardy in Juvenile Proceedings,* 14 Wm. & Mary L.Rev. 266, 275 (1972).

There are three pieces of model legislation in the area of juvenile law: the *Standard Juvenile Court Act,* prepared by the Committee on the Standard Juvenile Court Act of the National Council on Crime and Delinquency in cooperation with the National Council of Juvenile Court Judges and the Children's Bureau (6th Ed. 1959), hereinafter "Standard Act"; the *Uniform Juvenile Court Act,* approved by the National Conference of Commissioners on Uniform State Laws (1968), hereinafter "Uniform

Act"; and Model Act for Family Courts and State-Local Children's Programs, prepared by the Office of Youth Development of the Department of Health, Education, and Welfare (1975), hereinafter "Model Act". Section 7 of the Standard Act provides in part, "The judge may direct that any case . . . shall be heard in the first instance by a referee . . . but any party may, upon request, have a hearing before the judge in the first instance." Any party may then file with the judge a request for review of the referee's findings and recommendations. Section 7(b) of the Uniform Act provides: "The judge may direct that hearings in any case or class of cases be conducted in the first instance by the referee in the manner provided by this Act. Before commencing the hearing the referee shall inform the parties who have appeared that they are entitled to have the matter heard by the judge. If a party objects the hearing shall be conducted by the judge." Again any party may request a rehearing by the judge. Section 4(b) of the Model Act provides:

> Delinquency and neglect hearings shall be conducted only by a judge if:
>
> (1) The allegations set forth in the neglect or delinquency petition are denied;
>
> (2) The hearing is one to determine whether a case shall be transferred for criminal prosecution as provided in Section 31; or
>
> (3) A party objects to the hearing being held by a referee.
>
> Otherwise, the [judge] may direct that hearings in any case or class of cases shall be conducted by a referee in the manner provided by this (act).

Any party shall receive a hearing if he requests one.

The differences between these model laws and Maryland's statutory scheme are obvious. All the model acts permit any party to have the case heard in the first instance by the judge. Rule 910e [Rule 911c] of the Maryland Rules of Procedure does not permit this right. The Model Act, which is the most recent of the model legislation, also takes away from the referee or master delinquency and neglect hearings if the allegations set forth in the neglect or delinquency petitions are denied. Thus, the master would only hear routine matters that do not require the qualifications of a judge. These model pieces of legislation do not deter the extension of the constitutional prohibition against double jeopardy to juvenile proceedings.

Accordingly, it is this 16th day of September, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. Md.Ann.Code Cts. & Jud.Proc.Art. § 3–813 and Rule 910e [Rule 911c] Md.Rules of Procedure are unconstitutional to the extent that these provisions permit the State to file exceptions (a) to a juvenile court master's findings of non-delinquency and try the juvenile a second time, before the juvenile court judge or (b) to a juvenile court master disposition, and seek a new disposition before the juvenile court judge; and

2. Defendants, their agents, employees, persons acting in concert with them, and their successors-in-office are enjoined from taking exceptions to findings of non-delinquency or from taking exceptions to disposition pursuant to Md.Ann.Code Cts. & Jud. Proc.Art. § 3–813 and Rule 910e [Rule 911c] Md.Rules of Procedure.