**In the Matter of the WELFARE OF C. W. S.**

**No. 48108.**

Supreme Court of Minnesota.

June 2, 1978.

William Kennedy, Hennepin County Public Defender, Gerard W. Snell, Barbara Kehrberg, and Wright S. Walling, Asst. Public Defenders, Minneapolis, for appellant.

Gary Flakne, County Atty., David W. Larson, Asst. County Atty., Minneapolis, for respondent.

Heard before ROGOSHESKE, TODD, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Juvenile defendant, C. W. S., petitions this court for a writ of prohibition ordering the State of Minnesota to refrain from the pursuit of its appeal of the findings and recommendations of the juvenile court referee and restraining the juvenile court judge, the Honorable Lindsay G. Arthur, from granting the state a hearing on its purported appeal. The writ shall issue.

On May 5, 1977, the state petitioned Hennepin County District Court, Juvenile Division, for an order declaring C. W. S. delinquent, alleging that on or about April 21, 1977, C. W. S. had entered certain described premises with intent to commit theft. Trial was held on July 11, 1977, before the Honorable Robert W. Martin, a referee and member of the bar.[1] Referee Martin's recommendation at the conclusion of the trial was that the state's petition be dismissed.[2] On July 15, 1977, the state filed a notice of appeal[3] to the juvenile court, requesting that Judge Arthur review the findings and conclusions of the referee prior to his entry of the final order. The juvenile defendant's motion to dismiss the state's appeal was denied on August 16, 1977, and the petition to this court followed.

This court has power to issue writs where "necessary to the execution of the laws and the furtherance of justice." Minn.St. 480.04. Writs of prohibition are issued to restrain action by a lower court "where it appears that the court is about to exceed its jurisdiction or where it appears the action of the court relates to a matter

---

1. The juvenile court judge is authorized to appoint suitable persons, qualified by training and experience, to serve as referees, Minn.St. 260.031, subd. 1, and may direct them to initially hear any case or class of cases. Minn.St. 260.031, subd. 2.

   Adjudicatory proceedings upon a delinquency petition may be handled by a referee. Rule 43, Hennepin County Juvenile Court Rules; Rule 6.1, Hennepin County Juvenile Court Rules, effective July, 1977.

2. Recommendations by the referee are subject to final confirmation by the juvenile court judge. Minn.St. 260.031, subd. 3

   Written findings and recommendations, required by Minn.St. 260.031, subd. 3, were not provided by the referee; however, the bases for dismissal are evident from the grounds asserted in the state's notice of appeal to the juvenile court:

   "1. That the Court erred in finding that there was no Probable Cause to arrest the Respondent.

   "2. That the Court erred in suppressing the statement obtained from the Respondent.

   "3. That the Court erred in suppressing evidence seized from the automobile in which the Respondent was stopped.

   "4. That the Court erred in holding that the testimony of an accomplice implicating the Respondent in the burglary was uncorroborated."

3. The term "notice of appeal" was the caption originally used by the state. The state now prefers to refer to it as a "request for review," noting that the Interim Commission Comment (1959), 17 M.S.A. p. 557, accompanying § 260.031, subd. 4, states the "hearing [on the referee's findings] before the judge is not in the nature of an appeal, as it is in the Standard [Juvenile Court] Act." That comment, however, refers to the standard of review applicable—L.1959, c. 685, § 5, deleted portions of L.1957, c. 742, § 4, subd. 3, which made the referee's findings "prima facie evidence of the facts contained therein" upon rehearing before the juvenile court judge.

   Our primary concern is the practical effect and operation of the state's request, not the particular label applied.

that is decisive of the case * * *." *Thermorama, Inc. v. Schiller*, 271 Minn. 79, 84, 135 N.W.2d 43, 46 (1965). Petitioner C. W. S. contends that the state's appeal to Judge Arthur lacks necessary statutory authority and, further, that such review violates the double jeopardy protections announced in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Because we conclude that the state has failed to demonstrate necessary statutory authority for its review request, we need not reach the constitutional issue.

The legislature, in establishing the juvenile court, acted in accordance with the philosophy that the separate treatment of children is a viable ideal. We recognize and strongly support the proposition that the juvenile court's assumed ability to function in a unique manner means that adult criminal prosecutions and juvenile delinquency proceedings will not be equated for every purpose. We have no inclination to thus encourage the remanding of the disposition of children charged with crime to the criminal courts of this state. Nonetheless, in recent years the decisions of the United States Supreme Court[4] and this court[5] have recognized the relevance of constitutional guarantees and criminal procedural regularities in the juvenile court context.

█ It is axiomatic that the right of the state to appeal in criminal proceedings is contrary to common law and therefore must be expressly conferred by statute or must arise by necessary implication. *State*

*ex rel. King v. Ruegemer*, 238 Minn. 440, 57 N.W.2d 153 (1953). The state's special obligation in the context of juvenile proceedings to proceed in the best interest of the juvenile as well as society does not compel a relaxation of that standard. "[T]he admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." *Kent v. United States*, 383 U.S. 541, 555, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84, 94 (1966). Our decisions have consistently recognized the necessity of statutory authority for juvenile appellate procedure. See, *In re Welfare of Fields*, 285 Minn. 184, 172 N.W.2d 322 (1969); *State v. Zenzen*, 178 Minn. 394, 227 N.W. 356 (1929). Considerations of "fundamental fairness," at the least, compel us to require the state to demonstrate statutory authority for the course of action it proposes. This the state has failed to do. Rule 7.11, Hennepin County Juvenile Court Rules, permitting the state to "appeal" the decisions of a referee, is insufficient. While the juvenile court judge is authorized to promulgate court rules, no authority is given by Minn.St. 480.055, subd. 1, to set up rules in contravention of statute. The state is conspicuously absent from the list of parties specifically authorized by Minn.St. 260.031, subd. 4, to demand that the juvenile court judge review the findings and recommendations of the referee prior to entry of the final order.[6] The omission is significant, given the specific authorization for the state in similar provisions in other jurisdictions,[7]

---

4. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (notice of charges; right to counsel; right of confrontation and cross-examination; privilege against self-incrimination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy). But, see, *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (denial of trial by jury did not offend "fundamental fairness" under the due process standard in juvenile court context).

5. *In re Welfare of Raino v. State*, Minn., 255 N.W.2d 398 (1977) (notice of charges); *In re Welfare of T. D. F.*, Minn., 258 N.W.2d 774 (1977) (right to effective counsel). But, see, *In re Welfare of Spencer*, 288 Minn. 119, 179

N.W.2d 95 (1970) (pretrial hearing to determine admissibility of evidence not mandatory).

6. Minn.St. 260.031, subd. 4, provides: "The minor and his parents, guardians, or custodians are entitled to a hearing by the judge of the juvenile court if, within three days after receiving notice of the findings of the referee, they file a request with the court for a hearing. The court may allow such a hearing at any time."

7. *Brady v. Swisher*, 436 F.Supp. 1361 (D.Md. 1977); *Aldridge v. Dean*, 395 F.Supp. 1161 (D.Md.1975); *Jesse W. v. Superior Court*, 63 Cal.App.3d 408, 133 Cal.Rptr. 870 (1976); and *Matter of Maricopa County*, 26 Ariz.App. 518, 549 P.2d 613 (1976) (reached the double jeopardy issue only after noting explicit statutory authority for the state's request to the juvenile

and the more general provision allowing "persons aggrieved" to appeal the final orders to this court.[8] That phrase, of course, includes the state. *In re Welfare of I. Q. S.*, 309 Minn. 78, 244 N.W.2d 30 (1976). Thus, we conclude that the state is without authority to request the juvenile court judge to review the referee's findings and recommendations. This holding does not affect the duty of the trial judge to review the referee's determination and exercise his judgment to confirm or reject it in whole or in part. Petitioner's request for a writ of prohibition is granted.

The petition is granted.

PETERSON, Justice (dissenting).

I respectfully dissent. In my opinion, the majority's holding that there is no statutory authority for review of the referee's determination fundamentally misperceives the statutory relationship between judge and referee.

The nature of the relationship between juvenile court judge and referee, and the extent of the referee's powers, are set out in Minn.St. 260.031. Under subd. 1 of that statute, the juvenile court appoints persons to hold office as referees "at the pleasure of the judge." Under subd. 2, "[t]he judge may direct that any case or class of cases shall be heard *in the first instance* by the *referee in the manner provided* for the hearing of cases *by the court.*" (Italics supplied.) Subdivision 3 provides:

"Upon the conclusion of the hearing in each case, *the referee shall transmit to the judge all papers* relating to the case, *together with his findings and recommendations* in writing. * * *." (Italics supplied).

After making these provisions, the statute states in subd. 4 that:

"The minor and his parents, guardians, or custodians are entitled to a hearing by the judge of the juvenile court if, within three days after receiving notice of the findings of the referee, they file a request with the court for a hearing. The court may allow such a hearing at any time."

Subdivision 4 is clearly a safeguard provision. It is intended to insure that following the hearing "in the first instance by the referee in the manner provided * * * by the court" (subd. 2), the child and his parents, guardians, and custodians have the statutory right to another hearing before the judge himself. This safeguard is significant because it is the judge, not the referee, who bears the final responsibility for deciding the case. This is clearly shown by subd. 5, the final subdivision of the statute, which provides that "the findings and recommendations of the referee become the decree of the court *when confirmed by an order of the judge.*" (Italics supplied.)

The statutory scheme outlined above clearly indicates that the juvenile court judge has the authority—in fact the duty— to review all determinations made by the referee.[1] This authority is manifest in the statutory provisions that juvenile court referee determinations (a) are only recommendations, subds. 3 and 5; (b) must be made in the manner provided by the court, subd. 2; (c) must be transmitted to the judge, subd. 3; and (d) must be confirmed by the judge, subd. 5.

Since the judge's authority to review all referee determinations is clear, the question is reduced to who may request the judge to

court judge for review of the referee's findings).

8. Minn.St. 260.291, subd. 1, states: "An appeal may be taken by the aggrieved person from a final order affecting a substantial right of the aggrieved person, including but not limited to an order adjudging a child to be dependent, neglected, delinquent, or a juvenile traffic offender. * * *"

1. This view of the limited powers of juvenile court referees is consistent with the limited powers of family court referees under analogous statutes. As we stated in *Peterson v. Peterson*, 308 Minn. 297, 304, 242 N.W.2d 88, 93 (1976): "[W]e hold that all recommended findings and orders of a family court referee in custody matters are advisory only and possess no more than prima facie validity. The family court judge has the duty and retains the ultimate responsibility to make an informed and independent decision * * *."

exercise that authority. In my opinion, the majority is mistaken in viewing subd. 4 as limiting those who may make such a request. Subdivision 4 is a safeguard provision. It does not entitle the state to demand a second hearing before the judge, but this in no way bars the state from requesting the judge to review the recommendation arising out of the hearing before the referee. The state's authority to request this review flows from subd. 2, which provides that cases may be "heard in the first instance" by the referee "in the manner * * * provided by the court." Pursuant to this provision, Rule 7.11, Hennepin County Juvenile Court Rules, clearly provides for the state to request review of a referee recommendation that a delinquency petition be dismissed. This rule seems to me completely consistent with the statutory scheme and clear authority for the state to request the judge to review the recommendation made by the referee in this case.

KELLY, Justice (dissenting).

I join in the dissent of Mr. Justice Peterson. As pointed out in footnote 2 of the majority opinion, there actually were no written findings and recommendations in this case by the referee. Yet Minn.St. 260.-031, subd. 3, requires final confirmation of the recommendations by the juvenile court judge. If the prosecution is unable to present its views, failure to comply with the statute and other errors will not be called to the attention of the juvenile court judge. We recently received a request that the juvenile court judges be permitted to correct errors before an appeal to our court is made. The majority opinion would limit that opportunity. In our adversary system, it seems incongruous to refuse a hearing on the "findings and recommendations" of a referee. This type of ruling convinces me that referees should be done away with in juvenile court and all hearings should be before a juvenile court judge. Without a presentation by the prosecution, the exercise of the judgment cannot be very meaningful.