[Crim. No. 28676. Second Dist., Div. Two. Dec. 2, 1976.]

In re ANTHONY M., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ANTHONY M., Defendant and Appellant.

---

## Counsel

Wilbur F. Littlefield, Public Defender, John J. Gibbons, Anthony Luna, Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Kent M. Bridwell, Deputy Attorneys General, for Plaintiff and Respondent.

---

## Opinion

**ROTH, P. J.**—Appellant, charged with a violation of Penal Code section 211 was, after a hearing by a juvenile court referee on June 11, 1975, found and adjudged to be a minor under section 602 of the Welfare and Institutions Code.

On June 25, appellant, by the referee's order, was removed from parental custody "to be suitably placed." On June 27, 1975, application for a rehearing re the adjudication was filed charging that the evidence did not show beyond a reasonable doubt that appellant had committed the violation charged.[1]

On July 22, 1975, transcripts of the proceedings before the referee held on June 3, 4, and 9 (the pertinent date was actually June 11) were ordered to be prepared, completed and lodged with the court by August

---

[1]The referee's dispositional order was approved by the superior court judge on July 3, 1975.

6. A transcript by reporter (Hill) who had taken down the proceedings of June 9 was delivered to the court on August 5. The proceedings of June 3 and 4, which had been covered by a different reporter (Shwartztein) were not transcribed or filed and are not part of the record. The judge of the juvenile court, on August 19, 1975, as a result of this omission, ordered a rehearing as to adjudication *and* disposition with the notation "by default—no complete transcript."[2] And on October 8, 1975, the rehearing re adjudication was held before the judge. Appellant's motion made prior to the rehearing for leave to withdraw his petition therefor was denied. After evidence had been presented at the rehearing, the judge adjudicated appellant to be a person defined and embraced within section 602 of the Welfare and Institutions Code and ordered a second probation report, including a clinical evaluation. The second report was filed as ordered. In December 1975 a third probation report was, pursuant to the judge's order, prepared and filed. On January 5, 1976, at the rehearing *re* disposition the trial judge committed appellant to the Youth Authority.

The law announced in *In re Edgar M.*, 14 Cal.3d 727, 737 [122 Cal.Rptr. 574, 537 P.2d 406], mandated the order for rehearing. *Edgar M.* requires that an application for rehearing be granted if the transcripts of the referee's proceedings are not timely prepared or, if timely prepared, are not timely considered. As noted above, section 558 of the Welfare and Institutions Code was not complied with. It is clear, therefore, that the trial judge in this matter was required as a matter of law to proceed with a de novo adjudicatory hearing. He could, of course, have granted a hearing *sua sponte.*[3]

---

[2]Section 558 of the Welfare and Institutions Code provides as follows: "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing. Such application may be directed to all or to any specified part of the order or findings, and shall contain a statement of the reasons such rehearing is requested. If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right. If an application for rehearing is not granted within 20 days following the date of its receipt, it shall be deemed denied. However, the court, for good cause, may extend such period beyond 20 days, but not in any event beyond 45 days, following the date of receipt of the application, at which time the application for rehearing shall be deemed denied unless it is granted within such period."

[3]Section 559 of the Welfare and Institutions Code provides as follows: "A judge of the juvenile court may, on his own motion made within 20 judicial days of the hearing before a referee, order a rehearing of any matter heard before a referee."

█ Although appellant concedes that there was no judicial discretion exercised in the making of the order granting the rehearing, he asserts, nevertheless, that it was error for the court to deny his request to withdraw his application for a rehearing. The narrow issue is therefore whether an order entered by operation of law may be vacated when an applicant for the order seeks, for some reason, to withdraw and nullify a petition which requires the order.

The jurisdictional foundation upon which the rehearing rested was the order therefor, and not appellant's application. The trial court in the absence of any application was, under *Edgar M.* (p. 737), required *sua sponte* to make such an order. Appellant's application for a rehearing ceased to be of any procedural or jurisdictional significance once it had been filed and acted upon, and appellant's effort to "withdraw" it was a futile gesture because even if his motion to withdraw had been granted, the court would have been required to proceed with the rehearing by virtue of the court's order of August 19. Further, if we assume it would have been proper to vacate the rehearing, the effect thereof would have been to divest the superior court totally of its jurisdiction in this case because upon the grant of a rehearing, the referee's order becomes a nullity, a result not to be tolerated. (See *In re Bradley* (1968) 258 Cal.App.2d 253 [65 Cal.Rptr. 570].)[4]

The procedural contentions treated above are background only. The principal thrust of this appeal is that the dispositional order made by the trial judge, i.e., commitment to the Youth Authority, was more serious in its effect on the juvenile than that made by the referee. Appellant's attack is that the dispositional order made as a result of the rehearing has a chilling effect on the exercise by a juvenile of the right to petition for a rehearing. █ Appellant asserts that it should be held as a matter of law that even though a rehearing has been held, the juvenile court judge cannot impose a graver or more serious dispositional order than that entered by the referee.

In support of this contention appellant cites *North Carolina* v. *Pearce,* 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072], *Blackledge* v. *Perry,* 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098], and *People* v. *Henderson* (1963) 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677]. These cases are inapposite. Each of the cases is distinguishable because in each, the first adjudication

---

[4]As the Attorney General observes, the jurisdictional effect of the granting of an application for a rehearing on the referee's order is analogous to the effect of the grant of a hearing by the state Supreme Court on a decision of the Court of Appeal.

of guilt and punishment rested upon judicial acts and not upon determinations of subordinate judicial officers, i.e., referees whose powers are expressly limited by article VI, section 22 of the Constitution. ■ A clear distinction exists between an adjudication of guilt by a referee and a judge; our entire statutory scheme in juvenile proceedings accords to the former less weight than to the latter. In no case is a referee's order invested with the same weight as the initial judicial determinations made in *Pearce, Blackledge* and *Henderson.*

■ If the above distinction were not a complete answer to appellant's position, we note that unlike *Pearce,* the juvenile court judge at bench had several reports and studies made after the referee's order which indicated that appellant's behavior and conduct following the referee's order had deteriorated; in fact, the dispositional hearing before the trial judge was continued because of appellant's confinement to the county jail on charges of burglary. Thus, the test propounded by *Pearce,* which held that upon a retrial a harsher sentence can be imposed only if reasons for the increased penalty appear "affirmatively" in the record, is satisfied in this case.

In *Blackledge* it was held that the state may not substitute more serious charges following a person's demand for a trial de novo in a two-tiered system wherein the person was initially convicted of a misdemeanor offense. The charge at bench was the same before the judge as it had been when originally presented to the referee. And as noted, the supplementary reports made after the proceedings before the referee amply support the graver disposition ordered by the trial judge.

In *Henderson* it was held that a reconvicted defendant cannot suffer a harsher penalty than that imposed at the conclusion of the first trial, and prior to the appellate decision reversing the first conviction. The analogy which appellant seeks to draw from *Henderson* cannot properly be applied to juvenile court proceedings. It is elementary that upon the granting of a rehearing the juvenile is entitled to a trial de novo before a judge; the proceedings before the referee become *functus officio* and are of no force or effect, and even if *Henderson* applies, the record before the trial judge, and the trial court's disposition amply reflect new facts upon which the more serious disposition was made. (*People* v. *Thornton* (1971) 14 Cal.App.3d 324 [92 Cal.Rptr. 327].)

Finally, we address ourselves to the contention that a rehearing should not have been granted as to the disposition since appellant had only

petitioned for a rehearing on the adjudicatory order. As noted, the application for a rehearing was directed at the order which had adjudicated appellant to be a ward of the court. However, it is apparent that the referee's dispositional order was predicated on the adjudication that appellant had violated the laws of this state. Accordingly, the granting of a rehearing as to the adjudicatory order which, as noted above, effectively vacated the referee's order, would have left the dispositional order in limbo which would, of course, have been an absurd result. Accordingly, we hold that the granting of the rehearing *re* adjudication had the necessary effect of removing the entire proceedings to the de novo hearing contemplated by Welfare and Institutions Code section 560.

The orders appealed from are affirmed.

Compton, J., concurred.

**FLEMING, J.**—I concur.

For jurisdiction, the juvenile justice scheme relies on status rather than crime, and for remedy, on declaration of wardship and treatment rather than conviction and punishment. (Welf. & Inst. Code, §§ 602, 725.) Its ultimate purpose is treatment of the ward to promote his welfare. (Welf. & Inst. Code, §§ 502, 731.)

At bench, following what amounted to a trial de novo the court was required to order a type of treatment suitable for the ward. In determining suitability, the court in January 1976 had available more factual input and more psychological evaluation than had been available seven months earlier and, additionally, had the record of petitioner's conduct during the intervening seven-month period. As I read the juvenile court law (Welf. & Inst. Code, § 500 et seq.) courts must select an appropriate type of treatment for the ward on the basis of the best information available at the date of the court's order, not on the basis of information seven months out-of-date. Any selection of treatment seven months earlier on the basis of less complete information, is largely immaterial to selection of appropriate treatment for the ward in January 1976.

A petition for a rehearing was denied December 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1977.