[L.A. No. 31107. Dec. 12, 1979.]

In re PERRONE C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PERRONE C., Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, Paul Bell and J. Perry Langford for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Henry R. Mann and Gary W. Schons, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.**—The issue herein presented is whether, in the absence of a stipulation, a juvenile is denied due process of law when his jurisdictional hearing is conducted by a juvenile court referee under the present statutory scheme. We granted a hearing in this case because of the significant impact an affirmative answer to this question would have on the juvenile court system in this state. We now hold that a minor is denied constitutional due process under the Fourteenth Amendment of the United States Constitution and article I, sections 7, subdivision (a), and 15, of the California Constitution by being placed in jeopardy before a referee who, according to recent decisions of this court, discussed *infra,* exceeds his role as a subordinate judicial authority by acquitting a minor and thereby violates the California Constitution.

Our resolution of the present case was clearly foreshadowed by this court's former opinion in *Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893 [145 Cal.Rptr. 1, 576 P.2d 963] (hereafter *Jesse W. I*). We there held that the statutory procedure for redetermination of the minor's status in a de novo hearing by the juvenile court judge after dismissal of the charges by the referee constituted a second exposure to jeopardy for the same offense and violated constitutional double jeopardy prohibitions. We specifically recognized that *Jesse W. I.* and other cases meant that the role of the referee would have to be reconsidered and that it was apparent that a referee's usefulness in hearing the jurisdictional issue would be severely limited. We did not attempt at that time to define those limits.

On October 30, 1978, the United States Supreme Court vacated the judgment in *Jesse W. I,* granting petition for certiorari (439 U.S. 922 [58 L.Ed.2d 315, 99 S.Ct. 304]) and remanded the case to this court for reconsideration in light of *Swisher* v. *Brady* (1978) 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699].

Following remand we redetermined *Jesse W.* (*ante,* p. 41 [160 Cal.Rptr. 700, 603 P.2d 1306], hereafter *Jesse W. II*) reaffirming insofar as is here material the views expressed in our earlier opinion.

After an independent review of the issue presently before us we conclude that the well reasoned opinion of Justice Ehrenfreund for the Court of Appeal, Fourth Appellate District, correctly determines this appeal. Accordingly, that opinion, as modified in the light of our opinion in *Jesse W. II,* is adopted and is set out below.* In adopting the Court of Appeal opinion in a "By the Court" form, we follow a consistent prior practice. (See, e.g., *Lugosi* v. *Universal Pictures* (1979) 25 Cal.3d 813 [160 Cal.Rptr. 323, 603 P.2d 425]; *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Estate of Banerjee* (1978) 21 Cal.3d 527 [147 Cal.Rptr. 157, 580 P.2d 657]; *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316]; *Levy* v. *Cohen* (1977) 19 Cal.3d 165 [137 Cal.Rptr. 162, 561 P.2d 252]; *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152 [137 Cal.Rptr. 154, 561 P.2d 244]; *Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520 [131 Cal.Rptr. 394, 551 P.2d 1226]; *Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213].)

This appeal challenges whether a juvenile court referee has authority to make a jurisdictional finding of guilt against a minor in view of article VI, section 22 of the California Constitution limiting referees to performing only "subordinate judicial duties."

Perrone C., a 15-year-old youth, appeals from a juvenile court finding that he came within section 602 of the Welfare and Institutions Code by violating Penal Code section 236, a felony (false imprisonment). The juvenile court referee conducted a jurisdictional hearing in effect a trial in which witnesses were examined and cross-examined. The referee found beyond a reasonable doubt the allegation of false imprisonment was true. Perrone C. was later committed to the California Youth Authority. He applied for a rehearing; a juvenile court judge reviewed the record and denied his application.

Perrone C. contends he was denied constitutional due process under the Fourteenth Amendment of the United States Constitution and arti-

---

*(Brackets together, in this manner [ ], without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court.)

cle I, sections 7, subdivision (a),[1] and 15[2] of the California Constitution by being placed in jeopardy before a referee who could lawfully decide against him but not in his favor. ([See *Jesse W. II, supra, ante,* p. 41, at p. 47, fn. 5]; *In re Kenneth T.* (1978) 87 Cal.App.3d 142, 145 [150 Cal.Rptr. 737].) He further contends recent decisions of the United States Supreme Court and California Supreme Court must be interpreted to mean a juvenile court referee can no longer hold a jurisdictional hearing under our statutory procedure absent a stipulation between the parties allowing him to do so. For reasons we will explain, we agree with these contentions.

Under juvenile court law the judge of the juvenile court may appoint one or more referees to serve on a full-time or part-time basis. Currently every newly appointed referee must have been admitted to practice law in this state, generally for a period of not less than five years. (See Welf. & Inst. Code, §§ 247, 553.)[3] Until 1971 persons with at least five years experience in probation work at the supervising level were also eligible for appointment, and many of these nonlawyer referees may still be serving. (See Judicial Council of Cal., Annual Rep. (1977) Juvenile Court Rules and Comments, p. 27; Gough, *Referees in California's Juvenile Courts: A Study in Sub-Judicial Adjudication* (1968) 19 Hastings L.J. 3.) The referee serves at the pleasure of the appointing judge [ ]. Compensation paid to referees is fixed by the board of supervisors (§ 247). A referee hears those cases assigned to him by the presiding judge of the juvenile court *"with the same powers as a judge of the juvenile court."* (§ 248, italics added.)

Section 250 provides in part: "[A]ll orders of a referee...shall become immediately effective, subject also to the right of review as hereinafter provided, and shall continue in full force and effect until vacated or modified upon rehearing by order of the judge of the juvenile court. In a case in which an order of a referee becomes effective without approval of a judge of the juvenile court, it becomes final on the expiration of the time allowed by section 252 for application for rehearing, if application therefor is not made within such time and if the

---

[1]Article I, section 7, subdivision (a) provides: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."

[2]Article I, section 15, provides in part: "Persons may not twice be put in jeopardy for the same offense...or be deprived of life, liberty, or property without due process of law."

[3]All section references are to the Welfare and Institutions Code unless otherwise noted.

judge of the juvenile court has not within such time ordered a rehearing pursuant to Section 253."

Section 251 provides in part: "The judge of the juvenile court...may establish requirements that any or all orders of referees shall be expressly approved by a judge of the juvenile court before becoming effective." With regard to the application for rehearing, the minor or his representative may apply to the juvenile court judge for a rehearing after the referee has made a finding against him. Upon reading the record the judge may grant or deny the application (§ 252). There is no provision for the judge at that point to acquit or find in the juvenile's favor. He must first conduct a rehearing before he can do so. All rehearings of matters heard before a referee shall be before the juvenile court judge and *shall be conducted de novo* (§ 254, italics added). The judge may also order a rehearing on his own motion (§ 253). Finally, section 800 provides in part: "A judgment or decree of a juvenile court *or final order of a referee which becomes effective without approval of a judge of the juvenile court assuming jurisdiction and declaring any person to be a person described in Section 601 and 602*...may be appealed from in the same manner as any final judgment,..." (Italics added, see also Cal. Rules of Court, rules 1316-1319.)

Under this statutory scheme, it appears the Legislature gave juvenile court referees the power to make final orders. (See *In re Raymond P.* (1978) 86 Cal.App.3d 797 [150 Cal.Rptr. 537], hg. den. Jan. 25, 1979.) But [] [we] held in *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406] that juvenile referees are constitutionally limited to only "subordinate judicial duties" under article VI, section 22 of the California Constitution. Under that case there exists real question as to whether a juvenile court referee can constitutionally make any final determinations. "It is clear that without the availability of any review procedures the contested adjudication and disposition of a minor as a ward of the juvenile court by a referee acting without the parties' consent would violate the constitutional limitation upon his functions to 'subordinate judicial duties' (art. VI, § 22)." (*In re Edgar M., supra,* 14 Cal.3d 727, 735.)

So long as the referee's finding is advisory only, his power to act will be upheld. Where a referee attempts to make a final adjudication, his

act is unconstitutional. [His] "determinations...are not binding until adopted by the court itself." (*Id.,* at p. 734; see Cal.Rules of Court, rule 1316 (a).)

In examining the character of a referee's adverse finding when, as in our case, a minor files an application for rehearing [ ] [we] said: "[The] judge's decision to deny the application and hence adopt the referee's determinations as those of the court is based on data amply sufficient for forming a judgment independent from that of the referee. Under these circumstances the referee's intial findings and orders become only advisory and their rendition constitutes no more than a subordinate judicial duty." (*Id.,* at pp. 735-736.)

Thus *In re Edgar M.* held that where a minor files a petition for rehearing after a referee's adverse finding, such a finding is advisory only and not final until the juvenile court judge acts on the petition. On its face the opinion would appear to dispose of the case at hand so as to uphold the finding of the juvenile court. Other cases also have held a juvenile's due process and equal protection rights are not violated by having referees conduct jurisdictional hearings (*In re Gregory M.* (1977) 68 Cal.App.3d 1085, 1093-1094 [137 Cal.Rptr. 756]; *In re Jay J.* (1977) 66 Cal.App.3d 631, 634 [136 Cal.Rptr. 125]; *In re R.C.* (1974) 39 Cal.App.3d 887, 897 [114 Cal.Rptr. 735]; *In re John H.* (1978) 21 Cal.3d 18 [145 Cal.Rptr. 228]). [ ] [However the question remains] whether it is a violation of due process for a juvenile court referee to conduct a jurisdictional hearing in which he has the power to find against the minor but not in his favor. We treat the question [ ] as one of first impression.

### *Violation of Due Process*

■ [In] *Jesse W.* [*II.* we hold that] double jeopardy exists if, after a referee has acquitted or dismissed the petition against a minor at the jurisdictional hearing, the juvenile court judge then orders a de novo hearing (*Jesse W.* [*II*] v. *Superior Court* [*ante,* p. 41 at pp. 43, 47]). [] "A rehearing de novo 'is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held.' [Citation.]" (*Id.,* at p. [44].)

Under such circumstances [we] [ ] held the referee's finding becomes a final determination and constitutionally invalid (*id.,* at p. [47, fn. 5]).

[This] court concluded therefore that a referee who conducts a jurisdictional hearing cannot dismiss the petition. "[B]ecause a referee's determination favorable to a juvenile cannot be reheard, it is not merely a subordinate judicial act and is constitutionally proscribed. [Citation.]" (*Id.*, at p. [47], fn. 5.)

While striking down the referee's authority to make a finding in favor of the juvenile, [we] [ ] left intact the referee's authority to find against him [ ]. [It was nevertheless apparent that a referee's usefulness in hearing the jurisdictional issue would be severely limited. We did not purport to define those limits.] [ ] (*Jesse W.* [*II*] [ ] *ante,* p. 47, fn. 5.) [W]e believe it imperative to [ ] [do so now.] A trial procedure in which the trier of fact can only find against the accused, even if only advisory, is a blatant violation of constitutional standards. Under our system of justice all triers of fact must be free to find for or against a party appearing before them on the basis of the evidence. They are also under an oath to follow the law of our Constitution. Where a referee knows he will violate that law by acquitting a juvenile, then he is under a subtle but powerful pressure to find against him. The freedom of choice is no longer present. The process is slanted toward guilt. To place a trier of fact in such a position violates "a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (See *Palko* v. *Connecticut* (1937) 302 U.S. 319, 325 [82 L.Ed. 288, 292, 59 S.Ct. 149].) We hold the [referee's] inability [constitutionally] to acquit to be a violation of due process.

The existing law likewise places the judges of the juvenile court in an untenable position. They have a right to expect the referees in their court will decide jurisdictional hearings fairly, based on the evidence and in accordance with law. If judges permit referees to acquit, however, then the judges are sanctioning conduct contrary to the constitutional limitations placed on referees. [ ]

Under California law then, Perrone C. came to his jurisdictional hearing with this bleak prospect: *the referee conducting the hearing could not acquit him without violating the California Constitution no matter how weak the evidence.* That is because, as we have seen, a referee's finding of acquittal cannot be reheard. To do so would be double jeopardy. The acquittal would be a final determination, not merely a subordinate judicial act, which is constitutionally prohibited under article VI, section 22 of the California Constitution (*Jesse W.* [*II*] [ ]

[*ante,* p. 41, at p. 47, fn. 5]). *Under the law the referee could only find him guilty.* He can do this because the judge's later independent decision to deny the application for rehearing based on the record makes the referee's true finding advisory only, not a final determination (*In re Edgar M., supra,* 14 Cal.3d 727, 735-736). The judge, on application for rehearing, could not acquit Perrone C. unless he conducted a second trial (§ 252). At the second trial the judge could also give a harsher penalty than was given by the referee (*In re Anthony M.* (1976) 64 Cal. App.3d 464 [134 Cal.Rptr. 540]). *There is no way under this process Perrone C. could lawfully be acquitted in one trial.* To be acquitted he must be subjected to two separate trials, one before the referee, the second before the judge. The requirement of the second hearing in order to be lawfully acquitted conflicts with the spirit of *Swisher* and its focus on a single proceeding where the minor is not subjected "to the embarrassment, expense and ordeal of a second trial." (*Swisher* v. *Brady, supra,* 438 U.S. 204, 216 [57 L.Ed.2d 705, 716; 98 S.Ct. 2699, 2707].)

### Conclusion

We do not intend by this opinion to detract from the good work of juvenile court referees. But the state's interest in using referees to meet the heavy burden of juvenile court caseloads must be weighed against the increasing trend [of] granting constitutional safeguards to minors (see *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664]; *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]) and more particularly against fundamental notions of fair play. We are aware the purposes and structure of the juvenile system are different from the adult criminal justice system but that does not mean our concept of due process should be ignored [ ].

By stipulation of the parties full judicial powers can still be conferred on an otherwise qualified referee for the jurisdictional hearing (Cal. Rules of Court, rule 1316(b); *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 5-6 [118 Cal.Rptr. 21, 529 P.2d 53]).

We hold that absent a stipulation conferring judicial power, a juvenile court referee does not have authority under the California Constitution to conduct a jurisdictional hearing. Our decision applies only to jurisdictional hearings based on a section 602 petition.

■ In view of the widespread reliance on the authority of referees to hold jurisdictional hearings and the serious adverse effect retroactivity would have on the administration of justice, we limit the application of our decision to the present appellant and to jurisdictional hearings conducted after this opinion becomes final. (See *In re Love* (1974) 11 Cal.3d 179, 187-189 [113 Cal.Rptr. 89, 520 P.2d 713]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 301 [18 L.Ed. 2d 1199, 1206, 87 S.Ct. 1967]; *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 594 [150 Cal.Rptr. 435, 586 P.2d 916].)

Because of our holding it is not necessary to reach the other issues raised by appellant.

The order declaring appellant a ward of the court and committing him to the California Youth Authority is reversed. The case is remanded to the juvenile court for further proceedings consistent with this opinion.

**BIRD, C. J.,** Concurring and Dissenting.—I concur in the opinion of the court. I write separately for the purpose of raising a strong objection to the growing practice of issuing "by the court" opinions.

It is sound policy for this court to keep the use of such opinions to a minimum.[1] The important issues that come before us should not be decided anonymously. The litigants, their counsel, and the public have the right to know whose words they are reading. "By the court" opinions frustrate the exercise of that right. Further, they run counter to the respected principles of openness in government and personal accountability of public officials. A justice of this court simply should not have the prerogative of undercutting such fundamental democratic concepts.

The practice of issuing "by the court" opinions is subject to the abuse of overuse because there are no clearly established limits for its proper exercise. I appreciate the desirability of giving full recognition to Court of Appeal justices whose opinions are adopted by this court. However, neither judicial etiquette nor judicial ethics decree that such recognition is less than adequate if not conferred anonymously. That observation becomes even more compelling where, as here, the court has augmented

---

[1] I appreciate that there are valid reasons for issuing "by the court" opinions in attorney and judicial disciplinary proceedings. However, outside of the disciplinary context, those reasons do not apply.

its adoption of the Court of Appeal opinion with some significant discussion of its own.

When a balancing test is applied, the dangers of anonymity and overuse clearly outweigh any perceived benefits. I would urge that the balance be struck in favor of openness and that "by the court" opinions be reserved, with few exceptions, for attorney and judicial disciplinary proceedings.