[Crim. No. 36844. Second Dist., Div. One. July 30, 1980.]

In re EDUARDO G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
EDUARDO G., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and William Blum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Robert F. Katz and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DUNN, J.*—

I

On September 6, 1979, the District Attorney of the County of Los Angeles petitioned the juvenile court for an order declaring that minor Eduardo G. (age 17), comes within the provisions of Welfare and Institutions Code section 602.[1] The petition charged that the minor unlawfully took and drove an automobile without the consent of the owner in violation of Vehicle Code section 10851.[2] A second petition was filed on October 31, 1979, alleging that the minor comes within section 602 of the Welfare and Institutions Code in that he escaped from the custody of the probation officer while in juvenile hall pending the adjudication of the petition filed on September 6, 1979, in violation of Welfare and Institutions Code section 871.[3]

At the minor's adjudication hearing on November 23, 1979, the petition of September 6, 1979, was sustained by the juvenile court referee, and the petition of October 31, 1979, was dismissed. Concurrent with the adjudication hearing the court heard and denied the minor's motion to suppress certain evidence because of Fourth Amendment violations and his motion under the authority of *Miranda* v. *Arizona*[4] to suppress certain inculpatory statements made to police officers.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Welfare and Institutions Code section 602 provides in pertinent part: "Any person who is under the age of 18 years when he violates any law of this state...is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[2]Vehicle Code section 10851 provides: "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same...is guilty of a public offense ...."

[3]Welfare and Institutions Code section 871 provides: "Any person under the custody of a probation officer in a county juvenile hall...who escapes or attempts to escape from such county juvenile hall...is guilty of a misdemeanor."

[4]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Following disposition proceedings on December 7, 1979, the court found that it would be detrimental for the minor to remain in the custody of his parents and declared that the minor is a dependent child of the court under Welfare and Institutions Code section 726, subdivision (c), and ordered that custody of the minor be taken from the parents and that he be committed to the custody of the California Youth Authority for a period not to exceed three years.

Appellant's petition for rehearing of the adjudication of November 23, 1979, was denied on December 11, 1979, and the minor appeals from the disposition order.

## II

Los Angeles Patrol Officers Blaha and Heinz on September 5, 1979, at 3 a.m., were on patrol in a black and white unit in the vicinity of Miranda Street and Yolanda Avenue in a residential section of Reseda in the City of Los Angeles. The officers entered an alleyway and observed a 1972 Ford Torino approaching them at about five miles per hour. The officers noted the vehicle was occupied by two people and the driver appeared to be a minor. The officers turned their vehicle and followed the Ford out of the alley. The driver of the Ford, appellant, accelerated his vehicle out of the alley and down the street at 25 to 30 miles per hour with the officers following. Appellant drove approximately three blocks making two quick turns in the process and then abruptly stopped at a curb and extinguished the automobile headlights. The officers, while following the vehicle, radioed for Department of Motor Vehicles (DMV) license information on the vehicle. Before receiving a response they pulled up behind the appellant's parked vehicle.

The automobile was occupied by appellant and a young lady. The appellant stated in response to the officer's question that he was coming from his aunt's house. Appellant gave his name and his date of birth indicating that he was 18 years of age. He could not produce a driver's license or identification of any kind. When asked to whom the vehicle belonged appellant replied that it was owned by his aunt, Helen G., who lived in Inglewood. The officers again radioed for DMV information and determined that the Ford was registered to Patsy R. of Inglewood. Upon receiving this registration information Officer Heinz advised appellant of his constitutional rights, and then asked appellant if he gave up his right to remain silent. Appellant responded, "Yes." He was then

asked if he wanted to talk to the police officers without an attorney present and appellant replied, "Yes." It appears from the record that appellant was not asked if he understood the constitutional rights which he had just heard. Officer Heinz next asked appellant if the 1972 Ford was stolen. Appellant said, "Yes, we took it from that address tonight," indicating the address in Inglewood that had been broadcast over the police radio.

Mrs. Patsy R. testified that she was the owner of the 1972 Ford and had parked her car in the garage of her apartment building. She did not give permission to any person, including appellant whom she did not know, to use her car.

Appellant's adjudication hearing was before a superior court commissioner on November 23, 1979. He sustained the petition of September 6, 1979, which had been filed against appellant under Welfare and Institutions Code section 602, alleging a violation of Vehicle Code section 10851.

### III

Appellant first contends that he was denied due process inasmuch as a court commissioner sitting as a referee of the juvenile court lacks authority to conduct an adjudication hearing, relying on *In re Robert S.* (Cal.App.) for this assertion. Second, appellant urges that he was unlawfully detained, therefore, all evidence adduced subsequent to his detention must be suppressed. The unlawful detention arises, he argues, because he was stopped solely on the basis that he was a minor driving on a public street at a late hour. Appellant's third contention is that the admission into evidence of his confession, over his objection, constitutes reversible error because there was no proof at the adjudication proceeding that the appellant understood and knowingly and intelligently waived his constitutional rights.

### IV

Turning first to the issue of the authority of a referee to conduct a jurisdictional hearing we hold that the referee did have such authority hence there was no denial of due process on this ground. This very point

was decided in the case of *In re Perrone C.* (1979) 26 Cal.3d 49 [160 Cal.Rptr. 704, 603 P.2d 1300], where the Supreme Court of the State of California held that absent a stipulation conferring judicial power on a juvenile court referee he has no authority under the California Constitution to conduct a jurisdictional hearing based upon a petition under Welfare and Institutions Code section 602. This holding is founded upon the right of a minor to the essentials of due process and fair treatment before a juvenile referee or judge. Under article VI, section 22 of the California Constitution referees, when acting without the parties' consent are empowered to exercise only "subordinate judicial duties." His findings are advisory only. Any determinations made by a referee are not, therefore, binding until adopted by the juvenile court judge. A referee, clearly, has no power under existing law to acquit a minor and any attempt so to do would be constitutionally invalid as exceeding the referee's subordinate judicial authority. (*In re Perrone C., supra*, 26 Cal.3d 49 [160 Cal.Rptr. 704, 705]; *In re Edgar M.* (1975) 14 Cal.3d 727, 734 [122 Cal.Rptr. 574, 537 P.2d 406].) An acquittal, under existing law (see Welf. & Inst. Code, §§ 251, 252, 254; *In re Perrone C., supra*, 26 Cal.3d, at p. 51) cannot occur if an accused minor has a hearing before a referee because any rehearing before a judge, which is required by Welfare and Institutions Code section 254, would infringe the Fifth Amendment jeopardy provisions. (*Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664].) A process which constitutionally limits the hearing officer to finding against a minor and prohibits a finding in his favor, no matter how weak the case against him, is violative of due process. (*In re Perrone C., supra*, 26 Cal.3d at p. 56.) The *Perrone* decision, however, was prospective in nature and is inapplicable to the instant case which was heard on November 23, 1979. The case on which appellant relies, *In re Robert S.* (Cal.App.), has no application inasmuch as a Supreme Court hearing was denied on April 16, 1980, and the Reporter of Decisions was directed not to publish the opinion in the Official Reports (Cal. Const., art. VI, § 14; rule 976 Cal. Rules of Court).

Prior to *Perrone* a referee's adverse finding was advisory only and but one of the stages in a single continuing proceeding leading to a single adjudication.

## V

The validity of appellant's second contention rests upon whether there was reasonable cause for his detention. ■ Motorists have a constitu-

tionally protected interest against unreasonable intrusions based solely upon inarticulable suspicions. Good faith suspicions of a police officer are insufficient since if that alone were the test "...the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects' only in the discretion of the police." (*Beck* v. *Ohio* (1964) 379 U.S. 89, 97 [13 L.Ed.2d 142, 148, 85 S.Ct. 223].) ■ A police officer, when he observes some suspicious or unusual circumstances which are distinguishable from innocent activity and which reasonably infer criminal activity may, in the proper discharge of his duties, detain a motorist or pedestrian. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868]; *Restani* v. *Superior Court* (1970) 13 Cal.App.3d 189, 195 [91 Cal.Rptr. 429].)

The constitutional criteria for determining the validity of a detention has been stated to require: "...the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so; the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation omitted], to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ Examining the conduct of Officers Heinz and Blaha in light of this criteria we hold that their detention of appellant was reasonable. They observed appellant's vehicle in an alley at 3 a.m. driven by a person who appeared to be a minor. Although the officers suspicioned a violation of curfew by the driver, these observations alone were insufficient to justify any detention (*People* v. *Teresinski* (1980) 26 Cal.3d 457, 462, fn. 2 [162 Cal.Rptr. 44, 605 P.2d 874]; *In re Tony C., supra,* 21 Cal.3d 888.) When, however, the appellant accelerated his vehicle and made two quick turns and an abrupt stop, hurriedly dousing his auto lights, this conduct was not consistent with that of a person engaged in innocent activity. Appellant was not, as in the case of *People* v. *Teresinki, supra,* 26 Cal 3d at p. 462 "driving along a street in a lawful manner." Appellant's presence in an alley and the behavior of taking extraordinary precautions to avoid the following police vehicle, coupled with the fact that the appellant driver appeared to be a minor, do con-

stitute minimum but adequate recognizable and articulable factors to support a temporary stop for investigation. Such events were sufficient to arouse in the mind of a reasonable and conscientious police officer the honest and strong belief that investigation was warranted to determine if criminal activity was involved. ■ The validity of a temporary detention is a factual question to be determined by the trial court and if supported by substantial evidence will not be disturbed on appeal. (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 760 [86 Cal.Rptr. 767].) ■ We cannot say, after reviewing the record, that the trial court erred in sustaining the position that the officers were justified in believing that appellant was loitering by driving aimlessly or was or had been engaged in some other criminal activity. After appellant was stopped and appeared to be a minor who could not produce any identification, the detention and further investigation were reasonable.

## VI

■ Appellant's third contention raises the issue of whether the failure of an officer to specifically inquire of a defendant if he understands his constitutional rights mandates the exclusion of any subsequent inculpatory statement elicited from the defendant.

The record reflects that in this case the defendant was given the admonitions required by *Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974], to wit, that he has a right to remain silent, that any statement he does make may be used as evidence against him, that he has the right to the presence of an attorney either retained or appointed before any questioning can take place. The record further reflects that no affirmative steps were taken by the officer to ascertain if the waiver which appellant gave was made voluntarily, knowingly and intelligently.

■ The essential concern articulated by *Miranda* in this regard is that statements made by a defendant are "truly the product of free choice" (at p. 457 [16 L.Ed.2d at p. 714]). Any interrogation practice which is likely to exert such pressure upon an individual as to disable him from making a free and rational choice between speaking and silence, is proscribed. The essential question is: Were the statements the product of compulsion?

*Miranda* requires that the warnings be given to a defendant not only to provide him with an essential prerequisite to an intelligent decision, but also to "overcome the inherent pressures of the interrogation atmosphere," and to demonstrate that the "interrogators are prepared to recognize [the defendant's] privilege [to remain silent] should he choose to exercise it." (At p. 468 [16 L.Ed.2d at p. 720].) ▇ The constitutional privilege against self incrimination is applicable to juveniles as well as to adults (*In re Gault* (1967) 387 U.S. 1, 55 [18 L.Ed.2d 527, 561, 87 S.Ct. 1428]). ▇ A substantial burden rests on the prosecution to demonstrate that the appellant made a knowing, intelligent and voluntary waiver of his privilege against self-incrimination. (*Escobedo* v. *Illinois* (1963) 378 U.S. 478, 490 [12 L.Ed.2d 977, 985-986, 84 S.Ct. 1758]; *Miranda, supra* 384 U.S. at p. 475 [16 L.Ed.2d at p. 724].) A valid waiver of the privilege will not be presumed either from the silence of a defendant after he is advised or from the fact that an inculpatory statement was in fact obtained. (*Carnley* v. *Cochran* (1962) 369 U.S. 506, 516 [8 L.Ed.2d 70, 77, 82 S.Ct. 884]; *People* v. *Stewart* (1965) 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97].) ▇ The issue of whether a minor has waived his rights is a factual one for the trial judge. (*People* v. *Lara* (1967) 67 Cal.2d 365, 376 [62 Cal.Rptr. 586, 432 P.2d 202]; *In re Steven C.* (1970) 9 Cal.App.3d 255, 268 [88 Cal.Rptr. 97].) This determination by the judge will not be disturbed unless his judgment is grossly erroneous. (*People* v. *Brockman* (1969) 2 Cal.App.3d 1002, 1006 [83 Cal.Rptr. 70]; *People* v. *Stafford* (1966) 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Robinson* (1969) 274 Cal.App.2d 514, 520 [79 Cal.Rptr. 213].) Minors, to some extent are provided a mantle of protection in our society because of their inability to make insightful, mature decisions. The concern regarding a minor's welfare must be reconciled, however, with the legitimate interest of society in its own protection. Accordingly, when considering criminal acts perpetrated by minors there is no presumption that a minor is incapable of a knowing, intelligent waiver of his rights. He, instead, is afforded a method of adjudication and treatment which differs from that provided for adults. In California, it is settled that a minor has the capacity to make a voluntary confession. Whether it was voluntarily, knowingly and intelligently given must be tested by the totality of circumstances. (*Gallegos* v. *Colorado* (1962) 370 U.S. 49 [8 L.Ed.2d 325, 82 S.Ct. 1209, 87 A.L.R.2d 614]; *People* v. *Lara, supra,* (1967) 67 Cal.2d 365 [62 Cal.Rptr. 586].) Among the circumstances established to test whether or not a minor possesses the requisite capacity to make a voluntary confession are (1) his prior exposure to the

police and courts (2) admonition of his legal rights given him before his confession (3) his age and intelligence (4) the length of detention and interrogation (5) the presence or absence of counsel or family and (6) the accused's physical and mental conditions of health. (*People v. Lara, supra,* p. 385; *In re Norman H.* (1976) 64 Cal.App.3d 997 [136 Cal. Rptr. 145].) The pertinent facts of *In re Steven C.* (1970) 9 Cal.App.3d 255 [88 Cal.Rptr. 97] are similar to the instant case and the case is in point. The minor, Steven, age 16, was interrogated by a police officer in a school principal's office after having been admonished of his *Miranda* rights. He was not asked, however, if he understood the warnings (p. 268, fn. 12). The court concluded that in view of his prior police contact at which times he had been similarly advised, and there being no showing of below average intelligence or that the minor was physically or mentally fatigued at the time of questioning, his admission was made voluntarily.

 Similarly, in the case before the court, the minor was 17 years of age on the date that he articulated the inculpatory statements, a year older than Steven. The record, further, reflects that the minor in this case was also admonished of the rights required by *Miranda*, that prior to the waiver there was no incommunicado incarceration, that no "third degree" atmosphere prevailed, that the defendant was not exposed to threat or trickery or cajolery and there was no lengthy interrogation all of which are factors that are consistently present with the evincing of involuntary statements. There is no evidence in the record to suggest that the defendant was taken unfair or unlawful advantage of due to his ignorance, lack of intelligence, mental condition or vulnerability to persuasion. There is no demonstrated conduct of the minor which appears inconsistent with a willingness on the part of the minor to talk with the police voluntarily after having been advised of his rights. The totality of the circumstances is such that we cannot say that the trial court's determination was palpably erroneous. The facts support the court's finding and disposition order.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied August 29, 1980, and on August 20, 1980, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 1, 1980.