[Civ. No. 58993. Second Dist., Div. Four. Oct. 6, 1980.]

CHARLES R., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

946

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Kenneth I. Clayman, Donald R. Prigo and Henry J. Hall, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**FILES, P. J.**—This proceeding commenced with a petition filed in this court on March 31, 1980, by a minor seeking review of an order of the juvenile court made February 11, 1980, under Welfare and Institutions

Code section 707 finding him unfit to be dealt with under the Juvenile Court Law and remanding him to the procedures of the adult courts.

The petition was based upon three independent grounds: (1) That under Welfare and Institutions Code section 252 a rehearing should have been granted as a matter of law, because of the court's failure to show good cause for not ruling within 20 days; (2) that the fitness hearing should have been conducted by a judge rather than a referee; and (3) that the finding of unfitness was not supported by substantial evidence. This court considered all of these issues and on April 16, 1980, the petition was denied.

A petition for hearing was filed in the Supreme Court, which made the following order on May 16, 1980: "Petition for hearing granted. The matter is transferred to this court and retransferred to the Court of Appeal, Second District, Division Four, with directions that it issue an alternative writ of mandate directing the Los Angeles County Superior Court to grant petitioner a rehearing on the issue of fitness or show cause why it should not do so. (*In re Danny T.* (1978) 22 Cal.3d 918 [150 Cal.Rptr. 916, 587 P.2d 712]; *In re Michael C.* (1979) 98 Cal. App.3d 117 [159 Cal.Rptr. 306].)"

This court then issued its alternative writ as directed. The return of the People has been received, and the case has been calendared, argued orally and submitted.

The Supreme Court's order, citing the *Danny T.* and *Michael C.* cases, indicates its interest in our reasoning with respect to the timeliness of the juvenile court's order denying a rehearing. We, therefore, discuss that issue in detail. We will also explain briefly our reasons for deciding the other issues raised by the petition.

The underlying juvenile court proceeding commenced with a petition filed October 12, 1979, under Welfare and Institutions Code section 602 charging the minor, 16 years of age, with assault with intent to commit murder (Pen. Code, § 217) and assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)). The probation officer's report states that the minor approached a seven-year-old girl and ordered her to remove her dress; and when she refused, he beat and stabbed her. The knife penetrated her lung.

On October 18, the People moved for a finding of unfitness under Welfare and Institutions Code section 707. Before the matter was heard, counsel for the minor requested a hearing under Penal Code section 1368 on the minor's competence to stand trial. That hearing was held and the minor was found competent on November 26. After further delays requested on behalf of the minor, the fitness hearing was commenced on January 15, 1980, before Referee Kalinski, but was continued at the minor's request. On February 11 the referee made the order finding the minor unfit. On February 19 the minor filed an application for rehearing under Welfare and Institutions Code section 252.[1]

The minor's application referred to the hearings held on November 13, 1979, January 15, 1980, and February 11, 1980. The clerk of the superior court thereupon gave notice to Reporters Eva Smith and Dezza Jones, who had reported the proceedings on November 13, and to Reporter Archer Leung, who had taken the January 15 and February 11 hearings, fixing March 5 as the date the transcript would be due.

Reporter Leung signed and submitted to the court a printed form of "affidavit of reporter and order granting extension of time" whereby he requested that his time to prepare the transcript be extended to March 14, which would be the 24th day after the filing of the application for a rehearing. The request included this statement: "That the reporter's transcript in the above entitled case is estimated to be 200 pages in length;

"That I am unable to complete and file said transcript on due date for the following reasons: MY PORTION OF THE REHEARING INVOLVES TWO DAYS OF TESTIMONY."

[1]Section 252 provides as follows: "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing. Such application may be directed to all or to any specified part of the order or findings, and shall contain a statement of the reasons such rehearing is requested. If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right. If an application for rehearing is not granted, denied, or extended within 20 days following the date of its receipt, it shall be deemed granted. However, the court, for good cause, may extend such period beyond 20 days, but not in any event beyond 45 days, following the date of receipt of the application, at which time the application for rehearing shall be deemed granted unless it is denied within such period. All decisions to grant or deny the application, or to extend the period, shall be expressly made in a written minute order with copies provided to the minor or his parent or guardian, and to the attorneys of record."

Juvenile Court Judge Byrne indorsed upon this document an order extending the reporter's time to March 12 and stating further: "It appearing that good cause exists for extending the period during which the application for rehearing may be considered, it is further ordered that said time be extended to 3/14/80."

The reporter's declaration was dated February 22, 1980. The order of the judge is not dated, but the document was filed March 10, 1980, which was the 20th day after the application for a rehearing.

The transcript of the proceedings of January 15 and February 11 was delivered to the judge on March 14, 1980, and the application for rehearing was denied the same day, that is, the 24th day after the application had been filed.

*Timeliness of the Order Denying Rehearing.*

█ It is the contention of counsel for the minor that Reporter Leung failed to give an adequate excuse for not filing his transcript within the 20-day period, that the court's order extending the court's time limit 4 days was without good cause, and therefore, section 252 requires that the rehearing should be deemed granted by operation of law on March 10, which was the 20th day. As we shall point out, neither the existing case law on this subject nor the manifest purpose of the statute requires that result.

The relevant history of the rehearing procedure begins with former section 558, which provided that if an application for rehearing after a referee's decision was not acted upon within 20 days or the time extended for good cause the application would be deemed denied. In *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], the Supreme Court held this automatic denial unconstitutional. After disposing of the constitutional issue, the court said at page 737: "...The salutary purpose of [the time limit] was to prevent indefinite prolongation of uncertainty concerning the status of a referee's order as the order of the court.

"We believe that the legislative intent will be more fully effectuated within the constitutional restraint by altering the operative effect of these sentences rather than striking them altogether.... Thus we conclude that we can best harmonize the statutory purpose with the constitutional command by requiring that applications which would be

'deemed denied' under the section's literal wording be instead granted as of right, . . . "

The 1976 revision of the Juvenile Court Law renumbered former section 558 as section 252, but retained the unconstitutional "deemed denied" language. It was not until the 1979 amendment, (Stats. 1979, ch. 596, § 1) effective January 1, 1980, that the Legislature amended section 252 to articulate the intent which the Supreme Court had imputed to it in 1975.

A review of the opinions handed down since *Edgar M.* provides some guidance as to what constitutes "good cause," but none of them deal with a situation exactly like this case.

*In re Danny T.* (1978) 22 Cal.3d 918 [150 Cal.Rptr. 916, 587 P.2d 712], was a case in which the juvenile court denied a rehearing on the 23d day after the application had been filed, without having made any order within the 20-day period extending its time. The Supreme Court reversed, holding that the rehearing had been granted automatically in the absence of any recorded judicial action within the 20-day period. The court reasoned that to hold otherwise would eliminate the requirement of good cause for an extension of time. The issue of what constituted good cause for an extension of time was not before the Supreme Court because the juvenile court had not made any finding of good cause.

The opinion of the Supreme Court contains a footnote 3 on page 921 which is of particular interest because petitioner relies upon it in support of his position. The footnote states: "When the transcripts were filed, 3 of the 20 days remained. Thus the court could have acted on the petition. It is doubtful in any event that a delay in preparing transcripts should constitute 'good cause' for extending the time that a minor must wait, possibly in custody, before a referee's order is finally reviewed by a judge."

Since there was no problem of delay in the preparation of transcripts in *Danny T.*, the footnote must be regarded as a salutary warning to juvenile courts not to assume that transcript delay would justify an extension of time. Nevertheless, as we shall point out, under some circumstances the purpose of section 252 is better served by waiting a short time for a transcript as an alternative to an automatic grant of rehearing on the 20th day.

In *In re Freddie R.* (1979) 96 Cal.App.3d 829 [158 Cal.Rptr. 260], the juvenile court ordered the time for ruling on a petition for rehearing extended to 45 days without stating any reason for doing so. The rehearing was denied on the 41st day. The order was reversed because, absent any showing of good cause, the rehearing was granted by operation of law after 20 days had elapsed. Here again, there was no issue as to what constituted good cause.

*In re Michael C.* (1979) 98 Cal.App.3d 117 [159 Cal.Rptr. 306], also was a case in which the juvenile court extended the time to 45 days upon the ground that the transcripts would not be available until the 18th day. The transcripts were actually delivered on the 20th day and rehearing was denied by the juvenile court on the 27th day. Although the appellate court was critical of the delay in the preparation of the reporter's transcript, the decision rested upon the ground that the juvenile court had extended time to the maximum of 45 days, as in *Freddie R.*, without any showing that the extension was required.

We now turn to the contention of the minor's counsel here that delay in the delivery of a reporter's transcript in this case should compel a grant of rehearing. This attempt to establish a standard of good cause based upon the performance of the court reporters calls for some discussion of the relationship between the superior court and the shorthand reporters.

Although the reporters are court employees, their function in preparing transcripts bears more resemblance to that of an independent contractor. The transcript is ordinarily prepared outside of court hours by one or more reporters and one or more transcribers, who are paid for their product on a piece-work basis. There are many reasons not entirely within the control of the court or the reporter why a transcript will not be prepared within 20 days after a request. Three of the most common are illness, vacations and overload.

One unavoidable cause of overload is that the time when a transcript is to be prepared is determined by the litigants. Under Welfare and Institutions Code section 252, a juvenile is entitled to demand a rehearing at any time within 10 days after service of a referee's order. The transcript is then due at such time as will enable a judge to study it and rule within 20 days after the demand. A minor may appeal from a judgment at any time within 60 days (rule 39(b), Cal. Rules of Court), and the 20 days allowed for preparing the appeal transcript runs from the notice of

appeal. (Rules 39(a) and 35(b).) It is, therefore, theoretically possible that a reporter working steadily in a busy juvenile court could find that transcripts on appeal for all cases decided within a 60-day period and transcripts for all fitness hearings conducted within a 10-day period would be due on the same day.

A reporter leaving on vacation can never expect that no transcript will be due during the vacation unless the reporter abstains from fitness hearings for 10 days and all other cases for 60 days immediately preceding the intended vacation. Even that would not always avoid the problem, as the record in the present proceeding illustrates. Here we observe that when the minor filed his application for a rehearing on February 19, 1980, he requested a transcript which included proceedings taken November 13, 1979, by two reporters other than the one who reported the January 15 and February 11 hearings.

The record before us does not show whether a transcript of the November 13, 1979, proceedings was ever prepared or filed. The minor's counsel makes no point of this, doubtless because that portion was not necessary. Nevertheless, when the request was made, it placed a burden upon all three reporters to coordinate their work, assuming that the two November 13 reporters were both immediately available. Normally, when several reporters are involved, the transcript is not considered ready for filing until all have completed their portions.

Counsel for the minor criticizes the reporter who took the January 15 and February 11 proceedings both for his failure to file the transcript sooner and for stating that the transcript would be 200 pages in length when the transcript eventually filed contained only 80 pages. Counsel asserts that a reporter's time should be extended only for "unusual," "unique," or "extraordinary" circumstances. That criticism is based on some unrealistic assumptions. In the real world of a conscientious and efficient court reporter the preparation of a transcript upon the litigant's demand is not infrequently delayed by unavoidable circumstances which are neither unique nor extraordinary.

In order to complete the context in which the issue before us has arisen, it is necessary to examine the purpose and effect of the automatic grant provision of section 252. All of the cases which have discussed the subject agree that the purpose of the time limitations is to expedite juvenile court proceedings. *In re Danny T., supra,* 22 Cal.3d at page 921, speaks of the legislative policy "to ensure a prompt decision on whether

to grant review of the case, and to provide the parties with a definite time in which to expect action."

Section 252 says nothing about the time which should be allowed a court reporter for preparing a transcript. The statutory constraint is upon the action of the judge. The statute requires only that extensions of the court's time be "for good cause." A realistic appraisal of this standard must take into account three truisms: (1) a reporter's transcript is essential for judicial review of a referee's decision; (2) a reporter's transcript cannot be produced solely by a judge's *ipse dixit*; and (3) automatic reversal and retrial of an issue which was fairly tried and justly decided will mean additional delay in that case and an additional burden upon the court system as a whole.

It must be borne in mind that the automatic rehearing is not a remedy for anything. To the contrary, the only certain consequence of the automatic rehearing is more delay. Nor does the automatic rehearing operate as a punishment of anyone who may have been responsible for the court's failure to act within the 20-day period. The automatic feature inflicts pain on no individual except as it wounds the pride and frustrates the aspiration of those who are striving for prompt and efficient juvenile justice.

The Supreme Court has pointed out that the salutary purpose of the 20-day time limit, with an automatic consequence, is "to prevent indefinite prolongation of uncertainty concerning the status of a referee's order as the order of the court." (*In re Edgar M., supra*, 14 Cal.3d at p. 737.) The statutory requirement that any judicially declared extension of the time shall be based upon "good cause" furthers the same objective. As the court pointed out in *Danny T., supra*: "Dispensing with the 'good cause' requirement would automatically extend to 45 days the time in which the juvenile court must act on a petition for rehearing." (22 Cal.3d at p. 921.) Subsequent decisions have emphasized that a routine extension granted without any record showing of good cause would defeat the purpose of the law. (See *Freddie R., supra*, 96 Cal.App.3d at p. 832; *Michael C., supra*, 98 Cal.App.3d at p. 123.)

We, therefore, proceed to review the action taken by the juvenile court in relation to the purpose of the applicable statute. Here the juvenile court judge was informed by the reporter that the transcript would not be available within the 20-day period, but that the reporter expected to file it on the 24th day. The judge then had two options. He could

refuse to extend time and allow the rehearing to be "deemed granted." Or he could extend the time four days and decide the issue on the merits. The first alternative would assure a prolongation of uncertainty, as the case would then be reset for a hearing de novo. The second alternative would permit a decision on the merits on the 24th day, which might avoid the necessity of a hearing de novo. In the face of that situation, the choice of the second alternative was clearly more consonant with the purpose of section 252. The record thus shows a proper exercise of judicial discretion in finding good cause for extension of the court's time to the 24th day. It is only of passing interest that the court also ordered that the transcript be delivered on the 22d day, but it was not received until the 24th day. Hindsight confirms the soundness of the court's decision to extend its time four days.

We cannot adopt the theory of counsel for the minor that "good cause" should be judged primarily upon the reason given by the court reporter in his request for additional time. To begin with, the decision we review is the decision of the juvenile court, and not the performance of the court reporter. Second, the application of the reporter requesting time is an interoffice communication by a layman, which should not be judged as though it were a pleading or notice of motion drafted by an attorney. The judge, as the reporter's supervisor, will know or be able to find out what problems the reporter has. The written communications between reporter and judge certainly are relevant and may be necessary to establish good cause, but reportorial efficiency is only one aspect of the problem. Even if a reporter is in any respect culpable, the judge still has and should have the responsibility for deciding whether the purpose of the law is better served by waiting a few more days for a transcript than imposing upon the system a possibly unnecessary rehearing.

*Sufficiency of the Evidence.*

■ Petitioner's contention that the finding of unfitness is unsupported by the evidence rests largely upon the opinions of psychologists and psychiatrists that petitioner had benefited or would benefit by therapeutic programs available to wards of the juvenile court.

The applicable test is whether the minor would be "amenable to the care, treatment and training program available through the facilities of the juvenile court." (See Welf. & Inst. Code, § 707, subd. (c), formerly subd. (b); *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 716 [135 Cal.

Rptr. 392, 557 P.2d 976].) Inasmuch as the minor was over 16 years of age and the offense was an aggravated assault, the minor was presumed unfit unless evidence established the contrary. Former Welfare and Institutions Code section 707 subdivision (b), in effect in 1979 provided: "...Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the juvenile court shall find that the minor is not a fit and proper subject to be dealt with under the juvenile court law unless it concludes that the minor would be amenable to the care, treatment and training program available through the facilities of the juvenile court based upon an evaluation of the following criteria:

"(i)   The degree of criminal sophistication exhibited by the minor, and

"(ii)   Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, and

"(iii)   The minor's previous delinquent history, and

"(iv)   Success of previous attempts by the juvenile court to rehabilitate the minor, and

"(v)   The circumstances and gravity of the offenses alleged to have been committed by the minor."

The decision is a matter within the sound discretion of the juvenile court. (*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 715 [91 Cal. Rptr. 600, 478 P.2d 32].) The offense was extremely grave: A sexually motivated attack on a seven-year-old girl including a knife wound penetrating the girl's lung. Although the minor had not previously been in the juvenile court, he had a history of behavior problems as far back as kindergarten, and including a child molesting incident at age 12. The experts agreed that the minor required a secure structured setting over a long period.

We cannot say on this record that the juvenile court abused its discretion in finding that the minor had not established amenability to treatment in the juvenile court under the standard set forth in section 707.

As a subsidiary point, the minor asserts that he has "a right to the benefits" of juvenile court treatment. This argument assumes fitness. It adds nothing to the argument on the sufficiency of the evidence.

*Jurisdiction of the Referee.*

■ Petitioner's theory that a referee may not preside over a fitness hearing is based upon the reasoning of *In re Perrone C.* (1979) 26 Cal. 3d 49 [160 Cal.Rptr. 704, 603 P.2d 1300]. That case reasoned that in an adjudication hearing under Welfare and Institutions Code section 602, since a referee's decision constitutes jeopardy under the double jeopardy provisions of the state and federal Constitutions and is, therefore, unreviewable except at the minor's request, the referee is acting in a judicial capacity, as distinguished from the subordinate capacity which the state Constitution (art. VI, § 22) prescribes for such officers. That reasoning is not applicable to a fitness hearing because such a hearing does not amount to jeopardy in the constitutional sense. Thus, there is no constitutional barrier to review a referee's decision by a judge; and under Welfare and Institutions Code section 253, a judge of the juvenile court may "order a rehearing of any matter heard before a referee." A fitness hearing is subordinate in the sense that it is subject to the decision of a juvenile court judge and, therefore, may be conducted in the first instance by a referee under the authority of article VI, section 22 of the California Constitution.

The petition is denied.

Kingsley, J., and Woods, J., concurred.

A petition for a rehearing was denied October 27, 1980.